No. 79-84

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

WAYNE A. CAMITSCH,

Defendant and Appellant.

Appeal from: District Court of the Second Judicial District,
In and for the County of Silver Bow.
Honorable Arnold Olsen, Judge presiding.

Counsel of Record:

For Appellant:

Joseph C. Engel III, argued, Butte, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Chris Tweeten argued, Assistant Attorney General,
 Helena, Montana
John G. Winston, County Attorney, Butte, Montana
Michael Wheat argued, Deputy County Attorney, Butte,
 Montana

Submitted: February 19, 1981

Decided:

Filed: APR 20 1981

Thomas J. Kearney

Clerk

Mr. Chief Justice Frank I. Haswell, sitting in place of Mr. Justice Frank B. Morrison, delivered the Opinion of the Court.

Defendant appeals from a conviction of three counts of sexual intercourse without consent and one count of sexual assault, following a jury trial in Silver Bow County. We affirm his conviction, but remand the cause to District Court for findings to support the District Court's designation of defendant as a dangerous offender.

Based on a statement given to police by a juvenile boy that he and two juvenile girls had been given wine and marijuana by the defendant and a certain "Doc West," and that the two men then "molested" the girls, Butte police Officer Graham and Detective Johnson went to defendant's auto repair garage on April 2, 1979. They told the accused that they were investigating a crime and that they wanted defendant to accompany them to police headquarters. Though the officers did not then specify the crime, the defendant voluntarily accompanied them to police headquarters. Upon arrival, Detective Johnson informed defendant of his rights and informed him of the allegations that he had engaged in sexual intercourse with juvenile girls. According to the officers, the defendant indicated that he understood his rights, read the Miranda card presented to him, and waived his rights by signing it. The officers testified that the defendant appeared sober and in control of his faculties; the defendant testified that he had been painting a car before the arrest, and that his faculties were impaired from the paint fumes.

While at the station, defendant gave a narrative statement in his own handwriting, admitting an act of sexual intercourse with A.R.B., a juvenile. Defendant was then placed under arrest. He then gave a taped statement similar to his written confession, which was later transcribed. The lower court suppressed the transcribed statement, finding that the defendant had been induced to sign blank pages onto which the taped statement was

later typed.

On May 3, 1979, the State charged the defendant and a codefendant by information with multiple counts of sexual assault and sexual intercourse without consent. The defendant moved to sever his trial from that of his codefendant. On June 19, 1979, the court granted the motion to sever and the State filed a separate information against the defendant. On June 25, 1979, the defendant moved to substitute another judge for Judge Arnold Olsen, contending that under the rule on substitution, a case is not assigned until the information is filed and that therefore the motion was timely. The court disagreed and denied the motion.

Prior to trial, defendant filed a motion in District Court, asking that he be granted the right to inspect the Youth Court records of the prosecuting witnesses, all of whom were juveniles, on the grounds that the records might have a bearing on the competency and veracity of those witnesses. The district judge denied the motion, relying on the confidentiality provisions of the Youth Court Act, sections 41-5-601, 41-5-602, MCA, and Rule 609, Mont.R.Evid.

Defendant was convicted of three counts of sexual intercourse without consent and one count of sexual assault. The district judge sentenced defendant to 40 years in prison on each count of sexual intercourse, and 10 years on the count of sexual assault, all to run concurrently. The court designated the defendant a dangerous offender. Judgment was entered on August 6, 1979.

Defendant appeals from the convictions on all counts, the denial of his motion for a new trial, and the court's designation of defendant as a dangerous offender. He raises six issues:

1.  Did the defendant voluntarily and knowingly waive his Miranda rights?

2.  Was the defense motion to substitute timely, when filed

52 days after defense counsel received notice of the judge's assumption of jurisdiction, but within ten days of the State's filing of a separate information against the defndant?

3. Did the trial court's refusal to disclose the Youth Court records of certain prosecution witnesses for use on cross-examination violate defendant's Sixth Amendment right to confront his witnesses?

4. Did the court improperly exclude testimony regarding coercion of a prosecution witness?

5. Did the District Court commit reversible error in rejecting certain of defendant's proposed jury instructions?

6. Did the court err in designating defendant a dangerous offender?

Defendant contends that the confession he made at the police station was not voluntary because he was incapable of waiving his rights, and because the police used coercive tactics in interrogating him. Therefore, he argues that the District Court erred in allowing his statement to be used as evidence against him.

In determining whether a confession should be suppressed, the trial judge must decide whether or not it was voluntary. State v. Lenon (1977), 174 Mont. 264, 271, 570 P.2d 901, 906. The determination of voluntariness depends on the "totality of the circumstances," with the burden of proof on the State to prove voluntariness by a preponderance of the evidence. State v. Allies (1980), ____Mont.____, 621 P.2d 1080, 1086-1087, 37 St.Rep. 2089, 2097.

Based on the evidence presented at the suppression hearing, the trial judge determined that defendant's confession was voluntary. Voluntariness is a factual question addressed to the discretion of the court, and that determination will not be overturned if it is supported by substantial credible evidence. State v. Allies, supra, ____Mont. at ____, 621 P.2d at 1087, 37

St.Rep. at 2097-2098.

The defendant testified at the hearing that he had been under the influence of paint fumes when he made the incriminating statement, and that he was advised of his rights only after the statement had been given. He further testified that police officers had told him that his statement would not be used against him, but would only be used as an aid in arresting "Doc West", a suspected child molester. The defendant further testified that Officer Johnson told him to sign several documents. Johnson allegedly represented one of the documents to be a "release" that, when signed, would allow defendant to leave the interrogation room; in reality it was a waiver of defendant's Miranda rights.

Police officers testified that defendant was advised of his rights four times before defendant made his statement. In each instance, the accused indicated that he understood his rights. Their testimony was corroborated by defendant's written statement, which was recorded on a "voluntary statement" document and the Miranda waiver card signed by defendant. The officers denied telling the defendant that they wanted the statement only as a tool in getting "Doc West". Both officers were experienced in dealing with suspects under the influence of intoxicants; they testified that defendant appeared sober and coherent.

Defendant testified that the words "sexual intercourse" were written on the "voluntary statement" document by Detective Johnson. The police officers testified that the defendant wrote the words after they inquired what the defendant meant by the statement, "I did it to a degree with [A.R.B.]." (one of the juvenile girls.)

The determination of voluntariness turned solely on the credibility of the witnesses. Two inconsistent versions of the events surrounding the confession were presented to the judge, and his denial of the motion necessarily includes a finding that

he chose to believe the officers' testimony. State v. Robuck (1952), 126 Mont. 302, 309, 248 P.2d 817, 820. We must defer to the district judge who is in a superior position to judge the credibility of the witnesses. State v. Lucero (1968), 151 Mont. 531, 543, 445 P.2d 731, 737.

We find that the district judge's finding of voluntariness is supported by substantial credible evidence. We will not substitute our judgment for his when there is substantial evidence to support his determination. State v. Allies, supra, _____ Mont. at ____, 621 P.2d at 1087, 37 St.Rep. at 2097-2098. The district judge correctly denied the motion to suppress.

Appellant argues that the district judge should have entered findings of fact and conclusions of law on the question of voluntariness, because there was conflicting evidence in the record. While we agree that it would be a better practice to do this, we have never held that a judge's failure to enter findings and conclusions in a suppression hearing would result in a reversal. Here, the basis of the judge's decision is obvious: he resolved conflicting testimony in favor of the State. We find no error in his failure to enter specific findings, particularly where defendant never asked that findings and conclusions be entered.

Appellant next claims error in the district judge's refusal to grant his motion for substitution of judge. We hold that the judge ruled correctly in finding that defendant's motion was untimely.

On May 3, 1979, the defendant and a codefendant, Randolph Scott, were charged by information with multiple counts of sexual assault and sexual intercourse without consent. On that date the State filed a timely motion to substitute a judge for the presiding judge. On the same day, Judge Arnold Olsen assumed jurisdiction. The following day defense counsel acknowledged receipt of notice that Judge Olsen had assumed jurisdiction. The

defendant then moved to sever his trial from that of his codefendant Scott. The court granted the motion to sever on June 19, 1979. On June 25, 1979, the defendant moved to substitute another judge for Judge Olsen. The motion was denied as not timely.

The defense motion, filed 52 days after defense counsel was informed that Judge Olsen had been assigned to the case, was clearly untimely. Defense counsel cites no authority, and we find none, holding that the filing of a separate information after severance of a criminal trial somehow revives the right to peremptorily disqualify the judge. The usual rule, under prior law, is that a right of disqualification, once lost, cannot be revived. Town Pump, Inc. v. District Court (1979), ____Mont.____ , 590 P.2d 1126, 1129, 36 St.Rep. 282, 286; State ex rel. Leavitt v. District Court (1977), 172 Mont. 12, 18, 560 P.2d 517, 521. Nor does defendant cite any authority holding that the filing of a separate information after severance of a criminal action initiates a new cause or proceeding which would give rise to a new right of substitution.

Defendant mistakenly cites Farr v. Superior Court of Maricopa County (1977), 114 Ariz. 485, 562 P.2d 365, for the proposition that the right of a party to disqualify a judge "cannot be abridged by an order separating the case." In Farr, defendant was initially charged with rape. Defense counsel moved to change judges. The motion was granted and the case was transferred to the respondent judge. Thereafter, the county attorney filed a second information, charging the accused with kidnapping. This second case was also assigned to the respondent judge. Defense counsel moved to change judges in this second cause. A few days later the State moved to consolidate the two causes, rape and kidnapping. Noting that the kidnapping case bore a separate filing date, a separate case number, and required a separate arraignment from the rape prosecution, the Arizona Supreme Court

held that the defendant was statutorily entitled to have his motion to substitute judges in the second case granted regardless of the fact that the two causes filed against him were consolidated. Farr, supra, 562 P.2d at 366. The court noted that the county attorney could have charged both offenses in one information, but chose not to do so. The court also intimated that if the motion to consolidate had been granted before the motion to change judges had been made in the second cause, the defendant could have been deemed to have waived his right to a peremptory change of judge.

Farr deals only with the effect of a motion to consolidate clearly separate proceedings on a peremptory right of disqualification--not with the effect of a motion to sever on the right of substitution.

The defendant's argument has no merit. He was on notice that Judge Olsen would preside over the proceedings both before and after severance. The district judge properly denied the motion for disqualification.

On June 29, 1979, shortly before defendant went to trial, the defendant filed a motion asking the court to allow counsel for defendant to inspect the Youth Court records of any complaining witnesses on the grounds that the records might have a bearing on the competency and veracity of those witnesses. The State countered with a motion in limine to exclude reference to such records, relying on the confidentiality provisions of the Youth Court Act, sections 41-5-601 and 41-5-602, MCA, and Rule 609, Mont.R.Evid. In denying defendant's motion, Judge Olsen stated that he would personally examine the witnesses' records to determine whether any of the girls should be examined by a psychiatrist before testifying.

Defendant's motion to inspect the prosecution witnesses' youth records was expressly based on a desire to examine them for information that the defense could use to challenge the witness-

es' testimonial competency and to impeach their credibility. He asserts that the trial court's refusal to allow such an examination violated the defendant's Sixth Amendment right to confront the adverse witnesses against him, relying on Davis v. Alaska (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347.

The Sixth Amendment guarantees the right of an accused to "be confronted with the witnesses against him," and this right is guaranteed to defendants in state proceedings as well as in federal proceedings. Pointer v. Texas (1965), 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923.

The United States Supreme Court has cautioned that confrontation must include more than defendant's being allowed to confront the witness physically. A primary interest secured by the confrontation clause is that of cross-examination, Davis v. Alaska, supra, 415 U.S. at 315, 94 S.Ct. at 1110, 39 L.Ed.2d at 353:

> "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. . . [T]he cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness . . . A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. Greene v. McElroy (1959), 360 U.S. 474, 496, 3 L.Ed.2d 1377, 79 S.Ct. 1400 (1959)."

In Davis, defense counsel argued to the Court that the principal witness for the State, a juvenile on probation, had reason to be biased and to color his testimony in favor of the State. However, based on the Alaska statute providing for the confidentiality of juvenile records, the trial judge refused to let counsel inquire into the witness' juvenile record and his

possible motivations to alter his testimony. The United States Supreme Court determined this to be error, finding that defendant was denied his constitutional right of confrontation.

The Supreme Court recognized the competing interest in maintaining the confidentiality of a juvenile's records. But the Court concluded:

> "In this setting . . . the right of confrontation is paramount to the State's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to [the juvenile] or his family by disclosure of his juvenile record--if the prosecution insisted on using him to make its case--is outweighed by [defendant's] right to probe into the influence of possible bias in the testimony of a crucial identification witness." Davis, supra, 415 U.S. at 319, 94 S.Ct. at 1112, 39 L.Ed.2d at 355.

We find that the judge's ruling here denying defendant's motion to inspect denied him his right to confront the witnesses against him. But our subsequent review of those juvenile records convinces us that the error in this case is harmless. See Salaz v. State (1977), ____Wyo.____, 561 P.2d 238, 241; State v. Myers (1976), 115 R.I. 1583, 350 A.2d 611, 614-615.

We decline to adopt a rule as broad as that which has been adopted in many states, which allows evidence of prior juvenile convictions to be used as evidence to attack the general credibility of a witness. See State v. Deffenbaugh (1975), 217 Kan. 469, 536 P.2d 1030. Montana, unlike many states, does not recognize the use of prior convictions to impeach the general credibility of a witness. Rule 609, Mont.R.Evid. Therefore, we confine the permissible use of these juvenile records to demonstrating, by cross-examination, a witness' bias, prejudice, or motive. See State v. Brown (1975), 132 N.J. Super. 584, 334 A.2d 392.

In this case, defendant attempted to attack both competency and credibility. The trial judge examined the juvenile records of the juvenile witnesses in order to determine whether the juveniles were competent under Rule 601, Mont.R.Evid. He

excluded testimony from L. B., finding that based on reports from Warm Springs, she was seriously mentally ill and should not testify. His examination of the other juvenile records revealed that all of the other witnesses were competent. The trial judge specifically voir dired J.S.E., the witness whose competency was in question, and found her to be competent. We find no evidence in the record indicating that J.S.E. was incapable of truthfulness or in any way incompetent to testify. It is within the discretion of the trial judge to determine competency and his findings will not be overturned absent an abuse of discretion. State v. Shambo (1958), 133 Mont. 305, 309, 322 P.2d 657, 659. Here the Court did not err in allowing the juvenile witnesses to testify.

We further conclude that the juvenile records provided no basis for impeaching the witnesses by showing bias or prejudice. Two of the juvenile witnesses had no juvenile records until the trial was completed; one witness (L.B.) was disqualified from testifying by the judge; one witness had been on probation for one month, but the probation had been completed before defendant was arrested in connection with this crime; the other witness (J.S.E.) was in fact involved with the juvenile court system at the time of trial. But defendant was given plenty of opportunity to cross-examine J.S.E. as to her motives for testifying, and her credibility was attacked many times while she was on the witness stand. She admitted lying when she was initially questioned by the police. She testified that she originally did not want to talk to the police, but changed her mind in order to teach the codefendant in this case a lesson. Defense counsel elicited the information from J.S.E. that she was presently a resident of the Mountain View Home, and asked her whether she had been promised any favors for testifying, all of which indicated to the jury that she was involved with the juvenile authorities.

In sum, we find that defendant should have been permitted

to inspect the juvenile records, in camera, in order to determine whether there were factors present which would give the witnesses a motive to testify in the State's favor, or render them somehow biased or prejudiced. But having made this inspection since the time of trial, we have determined that in this case, the denial of the motion to inspect was harmless error. Because defendant's rights were not prejudiced in this situation, we find no reason to grant defendant a new trial.

At trial, defendant offered testimony from Bill Murray, a Butte attorney, who was called to the police station on April 5, 1979 by Debbie Foster, the sister of codefendant, Randolph Scott. The defendant made a formal offer of proof stating that Murray would testify that Foster had told him that J.S.E., a prosecution witness and one of the victims, was being questioned in violation of her right to counsel and her right to remain silent. The court rejected the offer as hearsay. The defendant also offered Exhibit "J", a police investigative report, relating a statement taken from J.S.E. in which she allegedly repudiated her prior incriminatory statements regarding the defendant. The court excluded the report.

Defendant predicates error on these rulings of the trial judge, arguing that the court should have allowed the "jury to learn that one of the complaining witnesses was testifying after having been denied her rights to remain silent and be represented by counsel and had subsequently repudiated the incriminating statement she had made against the Defendant."

The district judge's ruling as to Murray's testimony was correct. Murray intended to testify as to what Debbie Foster had told him, and Foster's testimony was being offered for its truth. Rule 801, Mont.R.Evid. This testimony was clearly hearsay and was inadmissible. Rule 802, Mont.R.Evid. Further, defendant was not denied his right to get this information before the jury; he could have called Debbie Foster to testify about her

observations.

Defendant concedes that exhibit "J" may have been hearsay, but he argues that the evidence which it contained should have been presented to the jury nonetheless. We agree that it was inadmissible hearsay. Rules 803(8), 802, Mont.R.Evid. We do note that defendant was free to question the police as to the prior inconsistent statements made by J.S.E. contained in that report, Rule 801(d), Mont.R.Evid, and he was free to question J.S.E. about those statements. The court ruled correctly in denying this exhibit's admission into evidence.

Appellant next alleges error in the district judge's refusal to give several of his offered jury instructions. Defendant's proposed instruction No. 4 would have told the jury that:

> "A charge such as that made against the Defendant in this case is one which is easily made, and, once made, difficult to defend against, even if the person accused is innocent.
>
> "Therefore, the law requires that you examine the testimony of the female persons named in the information with caution."

We approved a similar instruction in State v. Smith (1980), ____Mont.____, 609 P.2d 696, 37 St.Rep. 583, and determined that it should be given in those cases in which the evidence at trial shows (1) personal enmity between the victim and the defendant, and (2) no corroborating evidence to support the victim's account of the rape. State v. Pecora (1980), ____Mont. ____, 619 P.2d 173, 37 St.Rep. 1742. See also State v. Higley (1980), ____Mont.____, 621 P.2d 1043, 37 St.Rep. 1942.

Here, the District Court properly refused to give the Smith instruction. As to Counts II and III, charging defendant with sexual intercourse without consent against A.R.B. and L.A.W., there was no basis in the evidence for offering this instruction. No evidence was adduced showing any personal enmity between the defendant and A.R.B. or L.A.W. In addition, there

was corroborating testimony from A.R.B.'s brother and from Mr. Nicholson, both of whom had witnessed the acts of defendant against A.R.B. The judge correctly determined that the jury should not be instructed to view the testimony of these two witnesses any differently from that of any other witness.

The evidence at trial did show personal enmity between the defendant and J.S.E. She testified that she wanted to teach Camitsch's codefendant a lesson, and the codefendant testified that J.S.E. had threatened that she would get even with defendant for keeping her from seeing the codefendant. Additionally, the only evidence of the crime was that given by J.S.E. herself, and she admitted to changing her story in several particulars. In sum, there was a sufficient basis in the evidence for this type of instruction, under Smith, but the defendant failed to limit the instruction to advising the jury to look with caution at the testimony of only J.S.E.

The instruction as offered was erroneous and incorrect with respect to the testimony of the other complaining witnesses, A.R.B. and L.A.W. Accordingly, it was correcty refused in its offered form. We find no error in the judge's refusal to give the instruction under these circumstances. State v. Pecora, supra, ____Mont. at ____, 619 P.2d at 175, 37 St.Rep. at 1745.

Defendant also predicates error on the trial court's failure to give two instructions relating to impeachment. Proposed Instruction No. 5 contained a definition of "impeachment" and an explanation that the law allows a witness to be impeached by prior inconsistent statements. Proposed Instruction No. 6 outlined for the jury certain types of evidence which could serve to impeach a witness' testimony.

Defendant agreed at trial that the explanation in proposed Instruction No. 5 about prior inconsistent statements was adequately covered by the court's Instruction No. 3. Therefore we need only consider whether a definition of "impeach" should have

been given to the jury. Although technical words and expressions used in jury instructions must be defined for the jury, words of common understanding need not be so explained. McGuinn v. State (1978), 177 Mont. 215, 225, 581 P.2d 417, 423; State v. Humphries (1978), 21 Wash.App. 405, 586 P.2d 130, 135. None of the instructions given to the jury contained the term "impeach," but the jury was told by the judge in Instruction No. 3 to consider certain factors in assessing the credibility of the witnesses. Instruction No. 3 told the jury how to analyze the testimony without ever telling them that they were to consider certain evidence as "impeaching" evidence. A definition of impeach was not necessary in that the jury was fully instructed on this aspect of the law and defense counsel was not precluded from arguing his theory of the case. See State v. Kirkaldie (1978), ____ Mont. ____, 587 P.2d 1298, 1304-1305, 35 St.Rep. 1532, 1538-1539; State v. Lee (1976), 221 Kan. 109, 558 P.2d 1096, 1099.

Defendant's proposed Instruction No. 6 was adequately covered by the court's Instruction No. 3. No. 6 contained a nonexhaustive list of evidence that a juror could consider in assessing the credibility of a witness, as set forth in the comments to Rule 607, Mont.R.Evid. Although it would not have been error to give such a specific instruction, it was unnecessary for the court to do so. The instruction given contained the substance of defendant's instruction:

> "You are the sole judges of the credibility of
> all the witnesses who have testified in this
> case, and of the weight to be given their
> testimony. You will judge the credibility of a
> witness by the manner in which he testifies, by
> the nature of his testimony, or by evidence
> affecting his character for truth, honesty or
> integrity, or his motives, or by contradictory
> evidence; and in determining the weight to be
> given to the testimony of any witness, you have
> a right to consider the appearance of each wit-
> ness on the stand, his manner of testifying, his
> apparent candor or lack of candor, his apparent
> fairness or lack of fairness, his apparent
> intelligence or lack of intelligence, his
> knowledge and means of knowledge on the subject
> upon which he testifies, together with all the
> other circumstances appearing in evidence on the
> trial.

" . . .

> "If you believe that any witness who has
> testified in this case has wilfully testified
> falsely as to any material matter in the case,
> you must reject such of his testimony as you
> believe to have been false and you have the
> right to view the rest of his testimony with
> distrust and in your discretion disregard it,
> unless, after examination of all the evidence,
> you find such testimony worthy of belief."

Court's Instruction No. 3.

It was clearly unnecessary for the court to give defendant's proposed instruction. The substance of it was contained in the instructions given, and we will look to the instructions as a whole in determining whether they are adequate. State v. Caryl (1975), 168 Mont. 414, 430, 543 P.2d 389, 398.

The last specification of error involves the district judge's designation of defendant a "dangerous offender" for parole purposes. Defendant argues that there was no evidence to support this designation and that this designation was as conclusory as the designation which this Court struck down in Matter of McFadden (1980), ___Mont.___, 605 P.2d 599, 37 St.Rep. 55.

Section 46-18-404, MCA, allows the district judge, in his discretion, to designate a criminal as dangerous for purposes of parole. In McFadden, supra, ___Mont. at ___, 605 P.2d at 600, 37 St.Rep. at 56, we held that a court must articulate its reasons for the designation, and that mere recitation of the statutory language was insufficient. The reason articulated here by Judge Olsen was that "[defendant] represents a substantial danger to other persons in society in the opinion of this Court."

We find this to be a mere recitation of the statute, and violative of McFadden. But because the record in this case reveals substantial evidence which could have led the district judge to designate defendant "dangerous," we remand the cause to the district judge for findings to support his conclusion.

Unlike the district judge in McFadden, Judge Olsen made a

finding that defendant was dangerous. However, without having the reasons articulated in the judgment, we cannot determine whether there was an abuse of discretion by the judge.

We affirm the convictions in this cause, and remand it to the District Court for findings to support the designation of defendant as "dangerous."

_____
Mr. Chief Justice Frank I. Haswell
sitting in place of Mr. Justice
Frank B. Morrison.

We concur:

_____

_____

_____

_____
Mr. Justice Fred J. Weber sitting
in place of Mr. Justice Daniel J.
Shea.