**Wayne A. CAMITSCH, Petitioner,**

v.

**Henry RISLEY, Warden, Montana State Prison; Mike Greely, Attorney General of the State of Montana, Respondents.**

No. 82–3065.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 6, 1983.

Decided May 3, 1983.

Joseph C. Engel, III, Butte, Mont., for petitioner.

Christian Tweeten, Helena, Mont., for respondents.

Before FERGUSON, BOOCHEVER and NORRIS, Circuit Judges.

FERGUSON, Circuit Judge:

## FACTS

Wayne Camitsch was convicted in a Montana state court of one count of sexual assault and three counts of sexual intercourse without consent. The complaining witnesses were four girls aged 12 to 14. Prior to trial, defense counsel moved for discovery of the police and youth court files of the four complaining witnesses and another witness, L.B., in order to aid in impeaching their competence and veracity. The trial court denied the motion, but agreed to examine the files *in camera* to determine whether they contained anything affecting the potential witnesses' competence or credibility. A hearing was held in chambers, and based on unrebutted evidence from L.B.'s youth court file, the court excluded her testimony on the ground that she suffered from a mental condition classified as "delusional," rendering her incompetent without a state showing of competence. For reasons that do not appear in the record, the state declined to make such a showing, and L.B. did not testify at trial. The court conducted a *voir dire* of one of the complaining witnesses, J.E., whose files also indicated psychiatric problems, although not of a delusional nature. She was permitted to testify.

During cross-examination of this witness, defense counsel was permitted to inquire into her possible motive for testifying. He elicited the information that she was currently residing in a juvenile detention facility, and asked whether she had been promised any favors for her testimony. At the time of trial, none of the other complaining

witnesses had a similar record of adjudication as a juvenile delinquent.

At the end of the trial the defendant offered proposed jury instructions, among them the following:

A charge such as that made against the defendant in this case is one which is easily made and, once made, difficult to defend against, even if the person accused is innocent. Therefore, the law requires that you examine the testimony of the female persons named in the information with caution.

The court refused to give this instruction. Camitsch was convicted, and appealed to the Montana Supreme Court on several grounds, including those raised here.

That court found that the denial of pretrial discovery "denied [Camitsch] his right to confront the witnesses against him." *State v. Camitsch,* Mont., 626 P.2d 1250, 1255 (1981). However, it concluded that "our subsequent review of those juvenile records convinces us that the error in this case is harmless." *Id.* Additionally, the court found that the proposed jury instruction had been properly refused, relying on a line of cases decided between Camitsch's trial and the appeal which established that the instruction must be given only "in those cases in which the evidence at trial shows (1) personal enmity between the victim and the defendant, *and* (2) no corroborating evidence to support the victim's account of the rape." 626 P.2d at 1257. Since these criteria were met only with regard to J.E., the instruction was erroneous with regard to the other three witnesses. Montana law places the burden on the defendant to offer legally sufficient instructions; therefore the court concluded that there was no error in refusing the instruction as proposed.

The Montana Supreme Court upheld Camitsch's conviction on all grounds, but remanded for resentencing. Camitsch then applied to the federal district court for habeas corpus relief on the ground that the Montana Supreme Court had erred in holding the confrontation infringement harmless and that it had applied new decisional law retrospectively so as to deny him due process. The district court denied the application, agreeing with the harmless error determination and refusing to find a due process violation in the jury instruction determination. Camitsch appeals both grounds.

ANALYSIS

I.

In *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Supreme Court held that Alaska's interest in the confidentiality of a juvenile's record of delinquency must yield to a criminal defendant's right to effective cross-examination where "serious damage to the State's case would have been a real possibility" had defense counsel been permitted to introduce the prior delinquency adjudication of the witness and his "vulnerable" status as a probationer as evidence of his pro-prosecution bias. 415 U.S. at 319, 94 S.Ct. at 1111. Camitsch attempts to expand the right of a criminal defendant under certain circumstances to introduce a juvenile offender's "record" (i.e., the fact of a delinquency adjudication and probationary status) into a general right to rummage through the otherwise confidential case files of every juvenile witness. *Davis* will not stretch that far.

In general, when we speak of a witness's or defendant's "record," we refer to a set of facts about that person, consisting of each previous arrest, whether the arrest led to conviction, and if so, the sentence imposed and served. Those facts are usually transcribed onto a single document, which is also called the defendant's "record" (or sometimes, "rap sheet"). This is obviously something quite different from: (1) the case file assembled by the prosecutor in relation to each charge against the person; (2) the case file assembled by the prison authorities during his period of incarceration; or (3) the case file assembled by his probation officer during his probationary period. Yet on occasion all three of these cases files may be referred to generally as "records," creating confusion.

The right which *Davis* extended to encompass juvenile witnesses is the right to impeach a witness by showing that he has a "record" in the precise, and not the loose, sense of that word—that is, the right to let the jury know that this witness is still facing pending criminal charges, has a prior conviction, or is still on probation. Such matters tend to give the witness a motive to aid the prosecution, or at least not to give truthful information that might jeopardize his chances to make a favorable plea agreement, shorten his sentence, or finish his probation successfully. *Davis* was necessary because many states sealed the records of juveniles, so that it was not possible for the jury to find out that the juvenile witness was, for example, on probation at the time he agreed to testify for the prosecution.

*Davis* does not change the fact, however, that the sensitive, informal information found in a juvenile case file may be shielded from disclosure. *Davis* makes a careful balancing of the interests of the juvenile and the state in protecting disclosure of the fact of delinquency against the interests of the criminal defendant in showing bias on the part of the juvenile witness. That balance comes out very differently if the juvenile's interest is not in simply hiding the fact that he has been found delinquent and placed on probation, but in keeping private such information in case files as what his teachers think about him, who his friends are, whether his mother is affectionate or distant, etc., etc., etc.

■ In short, *Davis* requires that the fact of adjudication as a delinquent be disclosed along with the fact of probationary status. But it does not require, nor should it be stretched to appear to require, disclosure of the private information found in a juvenile's case file.

■ Camitsch has offered no examples of restrictions by the court on his cross-examination of the only witness who had a record remotely similar to the one held by the witness in *Davis*. The information that this complaining witness was involved with the juvenile authorities was actually placed before the jury. As to the others,

[t]wo of the juvenile witnesses had no juvenile records until the trial was completed; one witness (L.B.) was disqualified from testifying . . .; one witness had been on probation for one month, but the probation had been completed before defendant was arrested in connection with this crime. . . .

*State v. Camitsch,* Mont., 626 P.2d 1250, 1256 (1981). The bare contention that it is impossible to tell how defense counsel *might* have been able to use the various information contained in a youth court file is insufficient to support a finding of constitutional error in denying access.

■ Camitsch also wished to use the information contained in J.E.'s file—informal reports by probation authorities, social workers and psychiatrists—in order to attack her competency as a witness. After an *in camera* inspection and *voir dire* of the witness, the trial judge found her to be competent, and the state supreme court upheld that determination as a matter of state law. 626 P.2d at 1256. Camitsch does not allege that this determination was erroneous, but rather that had he had access to the file he might have been able to persuade the trial court to make a different finding. We are unable to find a constitutional violation on these facts.

## II.

■ Camitsch also claims that the Montana Supreme Court applied decisional law retrospectively so as to deny him due process. At the time of his trial, Camitsch relied on *State v. Ballew,* 166 Mont. 270, 276, 532 P.2d 407, 411 (1975), which stated that the refusal to give the "easily made/difficult to disprove" instruction would be error when a specific cause for distrusting the testimony of the complaining witness was shown. After his trial, the grounds for giving such an instruction were narrowed even further, so that the instruction is now approved in Montana only where *both* personal enmity and lack of corroboration are shown. *State v. Smith,*

Mont., 609 P.2d 696, 699 (1980). Applying this narrower rule to Camitsch, the Montana Supreme Court found that the grounds were present only with regard to one of the four witnesses. Since Camitsch had offered the instruction without limiting it to one witness, the court found the trial judge justified in refusing to give it.

Camitsch does not contend that the refusal to give the instruction rendered the trial itself fundamentally unfair. Such a claim, if established, would justify federal habeas relief. *See Henderson v. Kibbe,* 431 U.S. 145, 154–55, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977); *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Rather he contends that at the time of his trial, the refusal should have led to his being granted a new trial on appeal. Thus, he argues, the fact that the Montana Supreme Court reviewed the jury instructions under current state law, rather than under that in effect at the time of trial, deprived him of his right to a new trial. We find the contention to be without merit.

■■■ Judicial decisions are not subject to the constitutional prohibition against *ex post facto* legislation. *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977). Such a decision may violate due process if the court's interpretation of a criminal statute enlarges its scope to cover behavior not previously considered to be unlawful. *See Bouie v. City of Columbia,* 378 U.S. 347, 353–54, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964). But this does not mean that every change in state law violates due process.

As the Court stated in *Linkletter v. Walker,* 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965), "the Constitution neither prohibits nor requires retrospective effect" of a new rule of constitutional law. It can thus hardly prohibit retroactive application of an interpretation of state law. The *Linkletter* Court did, however, recognize an obligation to "weigh the merits and demerits in each case." *Id.*

Certainly changes in state law regarding jury instructions can be envisioned that would be so prejudicial to the defendant's right to a fair trial as to render retrospective application violative of due process. The change made in this case, however, does not qualify. The Montana Supreme Court did not announce a new rule in this case; rather it simply applied previous decisions. Nor was the change unforeseeable. Many jurisdictions have disapproved this particular instruction in the last decade. *See, e.g., State v. Settle,* 111 Ariz. 394, 531 P.2d 151, 153 (1975) (instruction is contrary to state constitution); *People v. Rincon-Pineda,* 14 Cal.3d 864, 882, 123 Cal.Rptr. 119, 538 P.2d 247 (1975) (instruction is obsolete), *cf. United States v. Henry,* 560 F.2d 963, 966 (9th Cir.1977) (refusal to give cautionary instruction not error); *see generally* 92 A.L.R.3d 866, 870–77. And *Ballew* itself limited the situations in which the instruction would be appropriate, 532 P.2d at 411. Further restriction on its propriety should not have unduly surprised the defendant.

For the foregoing reasons, we AFFIRM the district court's denial of habeas corpus relief.