**UNITED STATES of America, Plaintiff–Appellant, Cross–Appellee,**

v.

**Karen ECCLES, Defendant–Appellee, Cross–Appellant.**

**Nos. 87–5062, 87–5089 and 87–5099.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1988.

Decided July 1, 1988.

---

Richard A. Small, Sp. Atty., U.S. Dept. of Justice, Los Angeles, Cal., for plaintiff-appellant.

Joshua C. Needle, Santa Monica, Cal., for defendant-appellee.

Before GOODWIN and HALL, Circuit Judges, and BELLONI,* District Judge.

GOODWIN, Circuit Judge:

Karen Eccles brings an interlocutory appeal from the district court's denial of her motions for dismissal of her indictment, disqualification of the prosecutor, and disclosure of grand jury transcripts. In addition, the government appeals and Eccles cross-appeals from the district court's order granting in part and denying in part the defendant's motion to suppress state-

* The Honorable Robert C. Belloni, Senior United States District Judge, District of Oregon, sitting by designation.

ments she made to government agents and attorneys.

On October 4, 1984, the defendant was indicted by a federal grand jury sitting in the Central District of California in a prosecution brought by a Department of Justice "Strike Force." Eccles was charged with five counts of making false declarations before the district court in violation of 18 U.S.C. § 1623 (1982). The indictment arose from statements that Eccles made during testimony in a suppression hearing in *United States v. Simpson*, 813 F.2d 1462 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987). These statements were inconsistent with statements that Eccles subsequently made to government agents and attorneys.

The court suppressed all statements made by the defendant prior to the appearance of a deputy public defender appointed to represent her, finding that all her uncounseled statements "were the product of psychological coercion in violation of her fifth amendment rights to due process of law and to be free from coerced self-incrimination." The government filed a timely notice of appeal.

On March 30, 1987, the defendant filed a clearly untimely notice of appeal from the district court's December 8, 1986 denial of her motions for dismissal of the indictment due to prosecutorial misconduct before the grand jury, for disqualification of the Strike Force, and for disclosure of grand jury transcripts. Eccles cited as grounds for jurisdiction, despite the untimely notice of appeal, *United States v. Benjamin*, 812 F.2d 548 (9th Cir.1987), which had been decided on March 11, 1987. On the same day, she filed a notice of cross-appeal, which raised the same issues addressed by her notice of appeal. The notice of cross-appeal also challenged the district court's denial in part of her motion for suppression. On April 6, 1987, the district court deemed the defendant's notices of appeal and of cross-appeal to have been filed as of March 30, 1987.

1. *Motion to Suppress.*

The government appeals and the defendant cross-appeals from the order granting in part and denying in part the defendant's motion to suppress. Before we reach the merits, we must first address the question whether we have appellate jurisdiction over this interlocutory appeal from the district court's ruling on a motion for suppression.

"As a general rule, an order by a district court denying or granting a motion to suppress is not an appealable final order under [28 U.S.C. §] 1291. Such an order is 'but a step in the criminal case preliminary to a trial thereof,' and is thus interlocutory." *People of the Territory of Guam v. Mafnas*, 721 F.2d 683, 685 (9th Cir.1983) (quoting *DiBella v. United States*, 369 U.S. 121, 131, 82 S.Ct. 654, 660, 7 L.Ed.2d 614 (1962)). *See DeMassa v. Nunez*, 747 F.2d 1283, 1286 (9th Cir.1984); *In re Search Warrants (Executed on January 23, 1983)*, 750 F.2d 664, 666–68 (8th Cir.1984).

■ Congress has by statute provided for interlocutory appeals by the government from a district court order "suppressing or excluding evidence ... if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." 18 U.S.C. § 3731 (1982). However, in this case, the United States attorney did not provide the necessary certification to the district court until after we heard oral argument.

We have held that delayed filing of a section 3731 certificate, although disfavored, does not destroy appellate jurisdiction. *See Meier v. Keller*, 521 F.2d 548, 553 (9th Cir.1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976). Precedent therefore compels us to allow the government to perfect jurisdiction in this case by filing the appropriate certificate after oral argument. We recognize, however, that a general rule excusing the government from filing a certificate until after oral argument would eviscerate the statutory requirement that the United States attorney certify that the appeal has not been taken to delay trial. *See* 18 U.S.C. § 3731. We therefore follow the lead of the Fifth Circuit in *United States v. Her-*

*man,* 544 F.2d 791, 794 (5th Cir.1977), and "serve notice upon [the government] that we will entertain no future section 3731 appeals unless the appropriate certificate is incorporated in the record on appeal." On its face, a failure to certify is a violation of the statute confirming the right to appeal.

The district court granted in part and denied in part the defendant's motion to suppress statements that she made to government agents and attorneys. The district court excluded statements made by the defendant to FBI Special Agent Robert Hamer and other members of the Strike Force between July 18 and July 24, 1984, finding that all such statements were the product of psychological coercion and were therefore involuntary. It found admissible all statements made by the defendant after the arrival of Janet Levine, a deputy federal public defender appointed to represent her.

The district court found that Special Agent Hamer approached Eccles on July 18, 1984, although at that time he lacked an arrest warrant, a search warrant, or probable cause to obtain a warrant. At this time and at subsequent meetings, the government never advised Eccles of her constitutional rights. During meetings from July 18 to July 24, 1984, one or more agents: 1) told the defendant that her life was in danger from Simpson and his attorney, that the attorney had been indicted for murder, and that a murder had been committed in Simpson's apartment;[1] 2) told her that she could not trust anyone outside of the government and not to contact anyone; 3) told her that she should obtain relocation through the Witness Protection Program, thereby obtaining income, housing, education, and detoxification, and, most importantly, that she then could be reunited with her daughter; 4) switched the location of the clinic from which she received methadone, thereby ensuring that she could receive her methadone only in the presence of Special Agent Hamer; 5) moved the defendant from her residence, claiming that it was too dangerous, and then com-

pelled her to stay at locations chosen by and paid for by Hamer; and 6) at some times denied her request to use the telephone.

The district court also found that the appearance of Deputy Public Defender Levine provided sufficient legal advice and moral support for the defendant to make informed and voluntary statements to the government.

Based upon these factual findings, the district court concluded as a matter of law that all statements made by the defendant prior to the appearance of her court-appointed attorney "were the product of psychological coercion in violation of her fifth amendment rights to due process of law and to be free from coerced self-incrimination."

> It's very clear in terms of the treatment regarding her and her daughter, the implications of all of the circumstances surrounding the possible threats on her life, her daughter's life, putting her together with her daughter in the witness protection program, the kind of promises that were put out on the [one] hand, the fear put out on the other hand. All of these kinds of things, given her background, which was well known to the Strike Force and to the F.B.I. at that time, her dependence on chemical substances, the methadone and other kinds of treatments that were supposedly used to abate that dependence that were almost fully in the control of the F.B.I.[,] all of the surrounding circumstances point directly to psychological coercion.

The district court declined to find that statements made after Levine's arrival were the result of the government's coercion. It found that there was the "opportunity, if nothing more, for Miss Levine to make herself available to Miss Eccles, Miss Eccles to talk with her, receive advice from her, and also to receive moral support." The court therefore concluded that any statements made by the defendant after

---

1. The murder that allegedly occurred in Simpson's apartment took place prior to Simpson residing there. In addition, the

charges against Simpson's attorney were subsequently dismissed for lack of evidence.

the appointment of an attorney were admissible.

Review of the district court's factual findings is for clear error, while the district court's conclusion as to voluntariness of a confession is reviewed *de novo*. *See United States v. Wolf*, 813 F.2d 970, 974 (9th Cir.1987). Due process requires the exclusion of statements only when "government officials employed coercive interrogation tactics which rendered the defendant's confession 'involuntary' as a matter of law." *Id.*

In order to be voluntary, a confession must be "the product of a rational intellect and a free will." *Blackburn v. Alabama*, 361 U.S. 199, 208, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960). The fifth amendment secures "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence." *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964). Consequently, a confession "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Id.* at 7, 84 S.Ct. at 1493 (quoting *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897)).

A confession is involuntary whether coerced by physical intimidation or psychological pressure. *Townsend v. Sain*, 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963). Law enforcement conduct which renders a confession involuntary does not consist only of express threats so direct as to bludgeon a defendant into failure of the will. Subtle psychological coercion suffices as well, and at times more effectively, to overbear "a rational intellect and a free will."

*Jones v. Cardwell*, 686 F.2d 754, 757 (9th Cir.1982) (quoting *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir.1981)), *cert. denied*, 440 U.S. 965, 99 S.Ct. 1513, 59 L.Ed.2d 780 (1979).

The government does not challenge the district court's factual findings but argues that the district court erred in concluding that the defendant was subject to psychological coercion rendering her statements involuntary. Applying the aforementioned legal standards, we find that, for the reasons given by the district court, it was proper to suppress as involuntary the statements made by the defendant before the appointment of her counsel. Whether or not Eccles might in fact have been free to refuse to cooperate with the Strike Force, the facts presented indicate that she believed herself compelled to cooperate.[2]

The defendant argues upon cross-appeal that the district court erred in declining to suppress statements made by her after Levine was appointed as her attorney. The defendant argues that, notwithstanding the appointment of an attorney, her subsequent statements should have been excluded as fruit of the poisonous tree.

Under *United States v. Halbert*, 436 F.2d 1226, 1227 (9th Cir.1970), a defendant may not cross-appeal from an interlocutory appeal under section 3731. *Accord United States v. Margiotta*, 646 F.2d 729, 734 (2d Cir.1981). *Halbert* held, however, that the court properly could "consider, under the appeal by the United States, Halbert's contention on his purported appeal" that he was not given a proper warning under *Miranda* where this claim would have provided an alternative ground on which the district court could have affirmed the district court's order suppressing his statements. *Halbert*, 436 F.2d at 1227; *see United*

---

**2.** Citing *Miranda v. Arizona*, 384 U.S. 436, 445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the government suggests that a finding of psychological coercion may not properly be made absent a finding that the defendant had been in a custodial setting and therefore was unable to remove herself from the coercive forces. Although a defendant's inability to avoid questioning is an important factor in determining

whether there has been coercion, even those defendants who are free to leave may be exposed to coercion sufficient to keep their confession from being "the product of a rational intellect and a free will." *Blackburn v. Alabama*, 361 U.S. 199, 208, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960). We therefore decline to find that statements made outside of a custodial setting are per se voluntary.

*States v. Swarovski,* 557 F.2d 40, 49 (2d Cir.1977) (stating that a defendant upon cross-appeal from an interlocutory appeal authorized by section 3731 "may assert grounds for affirming the order of suppression"), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 796 (1978); *United States v. Moody,* 485 F.2d 531, 534 (3d Cir.1973) (observing that where the government's appeal challenges a district court order suppressing evidence "the defendant can raise issues with regard to findings and rulings relevant to that order under the umbrella of the government's appeal").

■ We are presented here with what appears to be a question of first impression: Where the government has brought an interlocutory appeal of the district court's grant in part of a defendant's motion to suppress, may the defendant procure an otherwise unobtainable interlocutory review of the district court's refusal to suppress other statements? *Cf. Mafnas,* 721 F.2d at 685 (observing that defendants generally may not obtain such interlocutory review); *DeMassa,* 747 F.2d at 1286 (same).

We recognize that concerns of judicial efficiency could, if no other concerns were relevant, support the availability of interlocutory review in cases such as this. Hearing the defendant's appeal would cause no additional delay. The government has already brought an interlocutory appeal. Resolution of one or two such claims would not unduly broaden the scope of appeal. However, once the idea of piecemeal appeals takes root, it is difficult ever to get a case to trial.

Fortunately, we lack jurisdiction to hear the defendant's request for additional suppression upon interlocutory appeal under section 3731. For good reason, such interlocutory appeals are generally unavailable to defendants because the points can be raised on appeal. In the absence of express statutory language or relevant legislative history we decline to find that Congress intended to create an exception applicable in the unusual circumstance where the district court grants in part and denies in part a defendant's motion to suppress

statements. Such an extension would lend itself to delay and mini-trials followed by further piecemeal appeals. Additionally, by following a bright-line rule, courts avoid the necessity of making case-by-case determinations whether a given defendant's claims are within the scope of the government's interlocutory appeal.

It must be remembered that interlocutory review is the child of necessity. Given the availability of post-trial appellate review of district court orders denying motions to suppress, there is no need for interlocutory review. By contrast, interlocutory review of a district court's order suppressing evidence is made necessary by the double jeopardy clause, which prevents the government from obtaining post-acquittal review of an order suppressing evidence.

We therefore must decline to hear the defendant's claim that the district court improperly denied in part her motion for suppression of her statements. The defendant may appeal, if necessary, the partial denial of her motion for suppression upon post-trial appeal.

### 2. *Defendant's Appeal.*

The defendant filed her notice of a *Benjamin* interlocutory appeal nearly four months after the district court denied her motions to dismiss the indictment on the ground of prosecutorial misconduct, to disqualify the Strike Force, and to require disclosure of the grand jury transcript. Under Fed.R.App.P. 4(b):

In a criminal case the notice of appeal by a defendant shall be filed in the district court within 10 days after the entry of the judgment or order appealed from.... Upon a showing of excusable neglect the district court may, before or after the time has expired, with or without motion and notice, extend the time for filing a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision.

The defendant argues that her appeal should be deemed timely because of a recent change in the law of the circuit ex-

panding the availability of interlocutory review. When the district court issued its order, precedent precluded interlocutory review of a defendant's claim of prosecutorial misconduct before a grand jury. *See United States v. Garner,* 632 F.2d 758, 761–66 (9th Cir.1980), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981). On March 11, 1987—three months after the district court denied the defendant's motion —this court overruled *Garner* in *Benjamin,* 812 F.2d at 550–54. *Benjamin* held that interlocutory review must be made available for a defendant's claim of prosecutorial misconduct before the grand jury because the Supreme Court had recently decreed that such review no longer could be obtained on post-conviction appeal. *See id.* at 551–53 (relying upon the Supreme Court's holding in *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed. 50 (1986), that a supervening jury verdict of guilty establishes that any error in the grand jury proceeding was harmless).

■ No court has decided whether the failure to file a notice of appeal within the statutory time period is excused where appeal was apparently precluded by existing precedent but a subsequent change in case law made the interlocutory review locally available. However, the Federal Rules of Appellate Procedure and the case law interpreting them indicate that we have no statutory jurisdiction to consider the defendant's appeal.

"[C]ourts have consistently viewed the filing deadlines of Federal Rule of Appellate Procedure 4(b) as 'both mandatory and jurisdictional.'" *United States v. Avendano–Camacho,* 786 F.2d 1392, 1394 (9th Cir. 1986) (quoting *Smith v. United States,* 425 F.2d 173, 174 (9th Cir.1970)). "The time limits of Rule 4(b) prevent undue delay in the administration of justice and provide finality of orders and judgments, and thus must be carefully respected." *United States v. Ajimura,* 598 F.2d 510, 512 (9th Cir.1979) (per curiam).

Because the filing of a timely notice of appeal is jurisdictional, the defendant may not gain appellate review of her claims unless they were timely filed. Although the district court has the power under Fed. R.App.P. 4(b) to extend the period for filing a notice of appeal for a period of 30 days, the defendant did not appeal until long after the expiration of that time. Although Fed.R.App.P. 26(b) provides that an appellate court may "for good cause shown" enlarge the time for doing certain acts, it explicitly states that "the court may not enlarge the time for filing a notice of appeal." Fed.R.App.P. 26(b); *Matarese v. LeFevre,* 801 F.2d 98, 104–05 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987). *See also United States v. Cheek,* 761 F.2d 461, 462 (8th Cir.1985) (observing that neither a district court nor a court of appeals can do anything to extend the time for filing a notice of appeal after the expiration of the 40–day period following a district court's order). The defendant's notice of appeal was not timely, and it can not be made timely.[3]

Because the Federal Rules of Appellate Procedure preclude a finding that the defendant's notice of appeal was timely, we may assert jurisdiction over the defendant's appeal only if the failure to hear the defendant's claims would violate her constitutional rights. The defendant claims that application of Fed.R.App.P. 4(b) here would violate due process.[4]

---

**3.** We also reject the defendant's argument that, even if her appeal was untimely, we may consider these issues upon cross-appeal from the government's appeal of the district court's grant in part of the defendant's suppression motion. Circuit precedent establishes that no cross-appeal may be taken from interlocutory appeals under § 3731, given the lack of statutory or case authority for such an appeal. *Halbert,* 436 F.2d at 1227; *see Margiotta,* 646 F.2d at 734 (refusing to consider the defendant's motion to dismiss the indictment where "relief could be granted only upon a cross-appeal, which is unavailable in connection with interlocutory appeals pursuant to § 3731"). Given this, we need not reach the question whether the defendant's claims could be considered to be within the scope of cross-appeal.

**4.** The defendant also argues that application of Fed.R.App.P. 4(b) in conjunction with *Benjamin* would violate the *ex post facto* clause. *See* U.S. Const. art. I, § 9, cl. 3; art. I, § 10, cl. 1. However, it is established that "[j]udicial decisions are not subject to the constitutional prohibition against *ex post facto* legislation." *Camitsch v.*

■ The defendant may raise no due process claim in regard to her motions for disqualification of the Strike Force and for the production of grand jury transcripts because these issues will remain appealable after trial notwithstanding *Mechanik* and *Benjamin*. It is a settled rule "that a district court's order denying a motion to disqualify counsel is not appealable under § 1291 prior to final judgment in the underlying litigation." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981). Additionally, it has been held that a district court's order denying a petition for discovery of grand jury proceedings constitutes an interlocutory matter respecting discovery and therefore is not appealable. *See State of Illinois v. F.E. Moran, Inc.*, 740 F.2d 533, 535 (7th Cir.1984); *United States v. Carney*, 665 F.2d 1064, 1065 (D.C.Cir.) (per curiam), *cert. denied*, 454 U.S. 1081, 102 S.Ct. 636, 70 L.Ed.2d 615 (1981); *In re Grand Jury Proceedings*, 580 F.2d 13, 16 (1st Cir.1978); 9 J. Moore, *Federal Practice* ¶ 110.13[11] at 193 (2d ed. 1987). Because a supervening petit jury verdict would not demonstrate that these alleged errors were harmless, *Mechanik* and *Benjamin* have not affected the availability of post-conviction review. *See Mechanik*, 475 U.S. at 70, 73, 106 S.Ct. at 941, 943; *Benjamin*, 812 F.2d at 551. Therefore, given the availability of post-conviction review, the defendant could not have brought an interlocutory appeal as to these issues under *Benjamin* even if appeal had been timely.

*Mechanik* and *Benjamin* will make unavailable post-conviction review of the defendant's claim of prosecutorial misconduct before the grand jury unless the prosecutorial misconduct that she alleges is so great that it would not constitute harmless error. *See Mechanik*, 475 U.S. at 69–73, 106 S.Ct. at 941–43; *Benjamin*, 812 F.2d at 550–54. Thus, the defendant may make a colorable argument that her due process rights have been violated because she has been deprived of her right to appeal the denial of

her claim by *Benjamin's* expansion of *Mechanik's* harmless error doctrine. However, the defendant's due process argument fails because *Mechanik* and *Benjamin* eliminate post-conviction review only of harmless errors. *See Mechanik*, 475 U.S. at 69–72, 106 S.Ct. at 941–43; *Benjamin*, 812 F.2d at 551–54. By definition, such harmless errors do not affect "substantial rights," Fed.R.Crim.P. 52(a), and therefore do not implicate the due process clause. Conversely, post-conviction review remains available under *Mechanik* and *Benjamin* where the defendant has alleged prosecutorial misconduct that does implicate substantial rights protected by the due process clause. Therefore, the defendant's constitutional rights will not be violated by her inability to obtain interlocutory review of claims of misconduct before the grand jury.

The defendant, recognizing that we might be unable to assert jurisdiction over her interlocutory appeal, urges us to hold that she will be able to obtain post-conviction review of her claim of prosecutorial misconduct notwithstanding *Benjamin*. She argues that *Benjamin* worked a change in the law concerning the availability of post-conviction review. *See Benjamin*, 812 F.2d at 552 (observing that *Mechanik*, 475 U.S. at 72, 106 S.Ct. at 943, had left open the question as to the appropriate remedy for prosecutorial misconduct "that has affected the grand jury's charging decision and is brought to the attention of the trial court before the commencement of trial"). The defendant suggests that *Benjamin* should not be applied retroactively to bar her claim. *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) (setting forth a three-part test for determining whether a judicial decision should be applied retroactively).

We sympathize with the defendant's belief that retroactive application of *Benjamin* to preclude any appeal would "pro-

duce substantial inequitable results." *Id.* at 107, 92 S.Ct. at 355 (quoting *Cipriano v. City of Houma*, 395 U.S. 701, 706, 89 S.Ct. 1897, 1900, 23 L.Ed.2d 647 (1968)); *cf. Gibson v. United States*, 781 F.2d 1334, 1339–40 (9th Cir.1986) (holding that a shortened statute of limitations should not be applied retroactively as to bar otherwise valid civil claims), *cert. denied,* ___ U.S. ___, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987); *Barina v. Gulf Trading and Transp. Co.,* 726 F.2d 560, 562–64 (9th Cir.1984) (same); *Wiltshire v. Standard Oil Co. of California,* 652 F.2d 837, 840–42 (9th Cir.1981) (finding that it would be inequitable to apply retroactively changes in EEOC filing deadlines), *cert. denied,* 455 U.S. 1034, 102 S.Ct. 1737, 72 L.Ed.2d 153 (1982).

Because we lack jurisdiction to hear the defendant's appeal, any statements that we could make here as to the appealability after trial of the defendant's claims would constitute dicta. We therefore decline to resolve the issue. We emphasize, however, that the defendant may bring a post-trial appeal arguing that *Benjamin* should not be applied retroactively so as to bar her appeal.

We therefore hold that we lack jurisdiction to hear the defendant's appeal from the district court's denial of her motions for dismissal of the indictment on the ground of prosecutorial misconduct, for disqualification of the Strike Force, and for disclosure of grand jury transcripts. We do not intend to preclude the defendant from seeking review of the district court's orders upon post-trial appeal.

### CONCLUSION

We affirm the district court's suppression in part of statements made by the defendant to government agents and attorneys. We lack jurisdiction to hear the defendant's appeal from the district court's denial of her motions for dismissal of the indictment, disqualification of the prosecutor, and disclosure of grand jury transcripts, as well as her cross-appeal from the partial denial of her motion to suppress evidence. Nothing in our opinion is intended to question the right of the defendant to raise these issues in an appeal after trial.

AFFIRMED and REMANDED.