Cesar Ramirez GUTIERREZ,
Petitioner-Appellant,

v.

Bertram S. GRIGGS, Superintendent,
California Institution for Men at
Chino, Respondent-Appellee.

No. 81–4037.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1982.

Decided Jan. 7, 1983.

Robert Valencia, Berkeley, Cal., for petitioner-appellant.

Michael I. Mintz, Deputy Atty. Gen., San Francisco, Cal., for respondent-appellee.

Before DUNIWAY, CHOY and HUG, Circuit Judges.

CHOY, Circuit Judge:

Cesar Gutierrez appeals from the district court's summary denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254(b). Gutierrez was convicted of murder and is now serving a life sentence in a California state prison. The principal issue in this appeal is whether a district court can summarily dismiss a habeas petition under Rule 4, 28 U.S.C., following § 2254 without first resolving whether a petitioner has exhausted available state remedies with respect to the claim raised in the petition. Because we are convinced that it would be wasteful and inefficient to require a district court to make the exhaustion inquiry when on the face of the petition it is obvious that Gutierrez is not entitled to relief, we affirm.

I. *Background*

The facts of this case are not in dispute. On March 22, 1977, under orders from the Nuestra Familia, a para-military street gang, Gutierrez and Frank Reyes, a fellow gang member and Gutierrez's codefendant at trial, executed Flavio Garza, a Familia member who had been placed on the gang's "hit list." Garza had apparently been marked for execution because he had refused to kill someone else.

Garza's execution was witnessed by a Morgan Hill, California, police officer who had been watching the suspicious conduct of several people in a green 1967 Chevrolet. In part, the officer saw two men later identified as Gutierrez and Reyes leave the automobile and begin to walk towards a manufacturing plant. When the two men saw the officer, both men lowered their chins against their chests and one closed his coat over his stomach. The officer turned his car around, intending to stop the two men, when he noticed a third man in the automobile. The officer then parked his car and continued his observation of Gutierrez and Reyes. He saw them walk to the plant parking lot and begin a conversation with Garza. Suddenly, Reyes pulled out a black object that resembled a revolver and fired a shot at Garza. Gutierrez then pulled out a brown object that resembled a sawed-off shotgun and shot at the victim. Reyes began to run, but then turned and fired a shot toward some people in the parking lot.

Reyes, Gutierrez and the third man in the Chevrolet were all apprehended not far from the scene of the slaying. A sawed-off shotgun and shotgun shells were found in the green Chevrolet where Gutierrez was arrested. A .22 caliber revolver was found near Reyes when he was arrested. Garza suffered gunshot wounds in the right chest and lower lip and died from a shotgun wound in the abdomen.

Gutierrez has never disputed that he killed Garza. His sole defense at trial was that he killed Garza under duress. He claims that he, like Garza, would have been subject to execution had he failed to obey the execution orders.

At the close of trial, the court gave the jury the CALJIC 4.40 instruction on duress. The instruction defines duress as "threats and menaces" that "would create in the mind of a reasonable person the fear that his life would be in *imminent and immediate danger*" and stated that duress was a complete defense to the charged crime. *Id.* (emphasis added). In addition to the duress instruction given by the court, Gutierrez requested four other duress instructions directed to reducing the jury's verdict from first-degree murder to second-degree mur-

der or manslaughter.[1] The trial court refused to give the requested instructions.

On direct appeal, a California court of appeal upheld Gutierrez's conviction of first-degree murder. The court found, *inter alia,* that no authority existed for the requested instructions and that the jury had been properly instructed on the requisite mental state. The court also rejected Gutierrez's claims that the trial court erred in allowing a state official familiar with the Familia to invoke the official information evidentiary privilege and in refusing to make certain adverse findings on the issue of duress. On February 20, 1980, the California Supreme Court denied Gutierrez's appeal for a hearing.

Gutierrez then filed a petition for a writ of habeas corpus reiterating the previously raised claims and arguing that the trial court erred in failing to give the requested instructions *sua sponte.* Gutierrez also contended in his petition that the court's refusal to give the instructions on request or *sua sponte,* upholding the invocation of the official information evidentiary privilege, and its refusal to make adverse findings on duress violated his fourteenth amendment right to due process. The district court held that, as a matter of law, Gutierrez did not have a valid duress defense. It summarily rejected Gutierrez's claims without calling for a response from the state or holding an evidentiary hearing because Gutierrez had offered no proof that he had acted under a reasonable belief that his life was presently and *immediately* endangered at the time he committed the crime. Indeed, the court noted that Gutierrez was armed at the time of the killing and was presumably able to defend himself against immediate retribution.

## II. *Exhaustion*

■ A federal district court may not entertain a petition for habeas corpus unless the petitioner has exhausted available state remedies with respect to each of the claims raised. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Gonzales v. Stone,* 546 F.2d 807 (9th Cir.1976). Even a mixed petition, one containing both exhausted and unexhausted claims, must be dismissed, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Lundy,* 102 S.Ct. at 1199.

■ From the briefs and record before us, it is not clear whether Gutierrez raised the claims that the trial court erred by not giving the requested instructions *sua sponte* and that the trial court's actions violated his right to due process. The records of the state court proceedings were not a part of the record on this appeal. Neither the district court nor the parties' briefs on appeal discuss whether Gutierrez exhausted these claims. Normally, where there is no indication in the record that a habeas petitioner has exhausted available state judicial remedies, we will not consider the petition in order to protect the interests of comity. *See, e.g., Campbell v. Crist,* 647 F.2d 956, 956–57 (9th Cir.1981). Comity would be ill served, however, if we require exhaustion here.

### A. *Non-cognizable Claims Under § 2254*

■ A state prisoner is entitled to habeas relief under 28 U.S.C. § 2254 only if he is held in custody in violation of the Constitution, laws or treaties of the United States. *Engle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); 28 U.S.C. § 2254. Insofar as Gutierrez simply challenges the correctness of the state evidentiary rulings and the jury instructions, he has alleged no deprivation of federal rights. *See Engle,* 102 S.Ct. at 1567–68. When a state prisoner has failed to allege a deprivation of a federal right, § 2254 does not apply and it is unnecessary for us to determine whether the prisoner satisfied the § 2254(b) exhaustion requirement. *Cf. Engle,* 102 S.Ct. at 1567 n.19 (if state pris-

---

1. Requested instructions 5A and 5B stated that duress could negate the deliberation and premeditation required for a first-degree murder conviction under California law. Requested instructions 6A and 6B stated that duress could negate the malice aforethought required for either a first- or second-degree murder conviction.

oner alleges no deprivation of a federal right, unnecessary to determine whether prisoner preserved claim before state courts). Thus, the district court properly dismissed Gutierrez's petition insofar as he raised no deprivation of federal rights.

Gutierrez's challenge that the trial court's actions deprived him of due process under the fourteenth amendment, however, presents a claim cognizable under § 2254. We must, therefore, determine whether the dismissal of this claim was proper.

### B. *Cognizable Claims Under § 2254*

Rule 4 of the rules governing habeas petitions under 28 U.S.C. § 2254 enables a district judge to order a summary dismissal of a petition "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Thus, Rule 4 explicitly allows a district court to dismiss summarily the petition on the merits when no claim for relief is stated. The Rule does not make clear, however, whether the court may dismiss a petition without first examining whether the claims involved have been exhausted. The Advisory Committee Note following Rule 4 provides no clue; the Note simply treats a dismissal for failure to exhaust as an alternative to dismissal for failure to state a claim. *See* Advisory Committee Note to Rule 4, 28 U.S.C. Foll. § 2254.

Enabling a district court to dismiss summarily under Rule 4 in the unusual circumstances presented here would promote judicial efficiency without adversely affecting comity. The determination of whether all the claims in a petition have been exhausted generally requires the district court to examine the records of the state court proceedings. It would be wasteful and inefficient to require the district court to make this inquiry when, on the face of the petition, the district court can plainly see that the petition lacks merit as a matter of law. Moreover, if we dismiss a facially deficient petition for failure to exhaust, the petitioner will probably return to state courts for exhaustion and then return to the federal courts on a subsequent habeas petition. This would place a correspondingly higher burden on state and federal judicial resources.

Comity, which serves as the basis for the exhaustion requirement, *see Fay v. Noia,* 372 U.S. 391, 419–20, 83 S.Ct. 822, 838–39, 9 L.Ed.2d 837 (1963); *Sweet v. Cupp,* 640 F.2d 233, 236 (9th Cir.1981); *Harris v. Superior Court,* 500 F.2d 1124, 1126–27 (9th Cir.1974) (en banc), *cert. denied,* 420 U.S. 973, 95 S.Ct. 1394, 43 L.Ed.2d 652 (1975), would not be affected adversely by allowing dismissal in this limited situation. By summarily dismissing a habeas petition on the merits, a district court would be upholding the state court conviction. Consequently, no disruption of state court proceedings would occur. We, therefore, conclude that under Rule 4, a district court may dismiss a habeas petition without resolving whether a petitioner has exhausted available state remedies when on the face of the petition it is obvious that the petition lacks merit.

The Fifth Circuit apparently agrees with our conclusion. In *Rowell v. Oesterle,* 626 F.2d 437 (5th Cir.1980), the court, without examining whether exhaustion had occurred, affirmed a district court's *sua sponte* dismissal of a habeas petition. There was no factual dispute in *Oesterle;* only a purely legal question was involved. The court explained:

> If, as the district court found, the petition warranted sua sponte dismissal . . . because [it was] facially without merit, to withhold so ordering for lack of exhaustion would be an idle formality, precisely the sort of "mechanical" invocation that we have previously derided.

*Id.* at 438 n.1 (citing *Walker v. Johnston,* 312 U.S. 275, 284, 61 S.Ct. 574, 578, 85 L.Ed. 830 (1941)). *See United States ex rel. Sostre v. Festa,* 513 F.2d 1313, 1314 n. 1 (2d Cir.1975); *Jenkins v. Fitzberger,* 440 F.2d 1188 (4th Cir.1971).

We now must decide whether on the face of Gutierrez's petition it is obvious that the petition lacks merit as a matter of law.

### III. *Gutierrez's Due Process Claim*

Gutierrez's habeas petition claims that he was denied due process because the

trial court erred in (1) allowing a state official familiar with the La Familia gang to invoke the official information evidentiary privilege, California Evidence Code § 1040; (2) refusing to make adverse findings on the issue of duress once the privilege had been sustained; (3) refusing to give the requested jury instruction on duress; and (4) failing to give such instructions *sua sponte*. Central to all these claims is the assumption that Gutierrez has a valid duress defense under California law.[2] Only if Gutierrez has a valid duress defense would his due process claim have any merit.

■■■ Under California law, the defense of duress requires that the threat to life be imminent and immediate. *People v. Condley*, 69 Cal.App.3d 999, 1012, 138 Cal.Rptr. 515, *cert. denied*, 434 U.S. 988, 98 S.Ct. 619, 54 L.Ed.2d 483 (1977). Gutierrez does not attack this standard. Indeed, we have followed essentially the same standard in federal cases in this circuit. *See United States v. Michelson*, 559 F.2d 567, 569 (9th Cir. 1977); *United States v. Gordon*, 526 F.2d 406, 407 (9th Cir.1975). In this case, the state courts found that the threat to Gutierrez was not imminent and immediate. Even if we did not have to defer to the state courts' finding here, the result would be the same. Gutierrez's own statement of the facts establishes that he was armed at the time of the killing and was presumably able to defend himself against imminent and immediate retribution. Moreover, it shows that he could have asked for protection from or surrendered to the police officer he saw while walking with Reyes.[3]

IV. *Conclusion*

The district court properly refused to grant Gutierrez's petition without first examining whether Gutierrez had exhausted

his claims in state court. We can see no reason for requiring exhaustion where, as here, it would not serve the interests of comity. Insofar as Gutierrez simply challenges his conviction as a matter of state law, § 2254 and, consequently, the doctrine of exhaustion are not applicable. Because Gutierrez's own version of the facts cannot support a finding that he was in imminent and immediate danger when he shot Garza, the trial court's actions did not deny him due process of law and the district court properly dismissed the petition.

AFFIRMED.

---

**2.** The evidence denied admittance because of the official-information evidentiary privilege would not have shown that Gutierrez was in "imminent and immediate danger." Rather, it was information about how the Familia operated. It was, therefore, irrelevant and immaterial to Gutierrez's defense of duress.

**3.** This case is readily distinguishable from *Patterson v. Warden, San Luis Obispo*, 624 F.2d 69 (9th Cir.1980), and *Rhinehart v. Gunn*, 598 F.2d 557 (9th Cir.1979), because the petition here fails to allege facts which, if proven, would state a viable claim for federal habeas relief.