**Gary VAN PILON, Petitioner-Appellant,**

v.

**Amos REED, et al.,
Respondents-Appellees.**

**No. 84–4408.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 7, 1986.

Decided Sept. 16, 1986.

Frances E. Pennell, Steve W. Berman, Bernstein, Litowitz, Berger & Grossman, Seattle, Wash., for petitioner-appellant.

Michael P. Lynch, Dept. of Corrections, Olympia, Wash., for respondents-appellees.

Before GOODWIN, HALL, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge:

Gary Van Pilon, a Washington prisoner, appeals the district court's grant of summary judgment denying his petition for writ of habeas corpus under 28 U.S.C. § 2254. He sought relief from a 1980 state court conviction of two counts of first degree robbery, accompanied by a special finding that he was armed with a deadly weapon. We affirm.

## BACKGROUND

On June 15, 1979, the Seattle police arrested Pilon for the robbery of a pharmacy that took place six days earlier. The next day the police conducted a lineup in which Pilon and five other inmates of the local jail participated. Five witnesses viewed the lineup. Pilon was identified positively by one of the lineup witnesses, tentatively by another, and alternatively by a third witness. At a pretrial hearing, Pilon moved to suppress the lineup identification. He claimed the circumstances surrounding the robbery and the eyewitness identification procedure rendered his identification as the robber impermissibly suggestive and unreliable. Pilon's suppression motion was denied and he proceeded to trial.

At trial, four of the witnesses to the lineup identified Pilon as the robber. The robbery had been committed by a man and a woman. The woman testified at Pilon's trial. She admitted she had participated in the robbery. She testified, however, that the person with whom she had committed the robbery was not Pilon but someone else. Pilon did not testify. A jury returned a special verdict finding Pilon guilty of two counts of first degree robbery while armed with a deadly weapon. Pilon was sentenced to two concurrent life terms. The Washington Court of Appeals affirmed his conviction and the Washington Supreme Court denied review.

Having exhausted his state remedies, Pilon petitioned the federal district court for a writ of habeas corpus alleging that the state court had committed errors of federal constitutional dimension in admitting the eyewitnesses' identification testimony at trial, in denying his *in limine* motion to exclude evidence of two prior convictions, and in failing to give the jury a separate instruction that it had to find beyond a reasonable doubt that the weapon used at the time of the robbery was a deadly weapon. Without holding an evidentiary hearing, the district court granted summary judgment denying Pilon's habeas corpus petition.

Pilon filed a timely appeal and applied for a certificate of probable cause. The district court issued a certificate with respect to the eyewitness identification claim but denied the certificate as to all other claims. A motions panel of this court referred to this panel the question of whether, as a matter of law, a certificate of probable cause may be limited.

## ANALYSIS

### I

### *Limited Certificate of Probable Cause*

We address an issue of first impression in this circuit: does a district court's issuance of a limited certificate of probable cause restrict our review only to those issues stated in the certificate?[1] The Third and Sixth Circuits hold that a limitation in a certificate has no legal effect. *See United States ex rel. Hickey v. Jeffes*, 571 F.2d 762, 765 (3d Cir.1978); *Houston v. Mintzes*, 722 F.2d 290 (6th Cir.1983). The Second Circuit holds to the contrary. *Barber v. Scully*, 731 F.2d 1073, 1075 (2d Cir.1984).[2] As the Sixth Circuit stated in *Houston*,

[T]he question as to the legal effect of the attempt by the district court to limit its certificate to specific issues is, we recognize, less than momentous; this is a prime example of a situation in which it may not be of great importance what the law is but it is important that the law be clear.

*Houston*, 722 F.2d at 292.

We agree with the Third and Sixth Circuits that the scope of our review cannot be limited by a certificate of probable cause. Nothing in the language or legislative history of 28 U.S.C. § 2253 suggests that Congress intended this provision to permit a judge to limit the issues on appeal. Section 2253 provides that an appeal may not be taken "from the *final order* in a habeas corpus proceeding ... unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause" (emphasis added). This language is consistent with the general rule that appeals lie from final judgments or orders, not from determinations of legal issues. *See Hickey*, 571 F.2d at 765; *cf. New York City Health and Hospitals Corp. v. Blum*, 678 F.2d 392, 396–97 (2d Cir.1982) (28 U.S.C. § 1292(b), which speaks of interlocutory appeal of certain orders, allows appeal of orders, not of issues).

Moreover, the purpose of the requirement of a certificate of probable cause is to prevent abuse of the writ through frivolous appeals. *Barefoot v. Estelle*, 463 U.S. 880, 892–93 n. 3, 103 S.Ct. 3383, 3394 n. 3, 77 L.Ed.2d 1090 (1983). To obtain a certificate of probable cause, the petitioner must make a "substantial showing of the denial of [a] federal right." *Id.* at 893, 103 S.Ct. at 3394 (*quoting Stewart v. Beto*, 454 F.2d 268, 270 n. 2 (5th Cir.1971), *cert. denied*, 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126 (1972)). By issuing a certificate, the district court notifies this court that in its opinion the petitioner is not abusing the writ through frivolous litigation. The requirement of a certificate, therefore, tends to screen out frivolous appeals.[3]

---

1. Although we have at least twice limited our review to those issues to which a district court has limited a certificate of probable cause, we have not squarely addressed the issue of whether we are bound by such a limitation. *See United States ex rel. Nunes v. Nelson*, 467 F.2d 1380 (9th Cir.1972) (per curiam); *Choate v. Wilson*, 363 F.2d 543, 545 (9th Cir.1966). *But see Choate*, 363 F.2d at 546 (Hamley, J., concurring) (expressing view that certificate of probable cause may not effectively limit issues on appeal because certificate serves to confer jurisdiction, not to specify issues).

2. The Second Circuit has characterized limited certificates as "a court's sensible attempt to focus the attention of the litigants on the issues that merit review under the relevant standard." *Vicaretti v. Henderson*, 645 F.2d 100, 102 (2d Cir.1980), *cert. denied*, 454 U.S. 868, 102 S.Ct. 334, 70 L.Ed.2d 171 (1981).

Two other circuits have referred in passing to limited certificates, and have suggested opposing views. *See Nelson v. Moore*, 470 F.2d 1192, 1194 n. 1 (1st Cir.1972) (giving effect to limited certificate issued by a previous circuit court panel), *cert. denied*, 412 U.S. 951, 93 S.Ct. 3017, 37 L.Ed.2d 1003 (1973); *Johnson v. Bennett*, 386 F.2d 677, 678 (8th Cir.1967) (doubting, without deciding, whether trial court may limit issues), *vacated and remanded on other grounds*, 393 U.S. 253, 89 S.Ct. 436, 21 L.Ed.2d 415 (1968).

3. Although we hold that a district judge may not confine our review to issues listed in the certificate of probable cause, we recognize that the district judge's assessment of the substantiality of certain issues often serves the commendable purpose of focusing the litigants' attention on the most serious issues. We thus encourage district judges to identify the issues they deem most substantial.

To the extent that *limited* certificates of probable cause represent an effort to eliminate frivolous issues from consideration on appeal, they have little practical effect. A single circuit judge may issue a certificate that dissolves the limited certificate. *See* 28 U.S.C. § 2253. As the Second Circuit has recognized, circuit judges by statute may broaden the scope of an appeal that was limited by a district judge if it is just under the circumstances. *Barber*, 731 F.2d at 1075; *see* 28 U.S.C. § 2106; *see also Vicaretti*, 645 F.2d at 102 (limitation in certificate is not jurisdictional and it authoritatively limits issues only when acted upon by a panel of three circuit judges). Also, whenever the district judge denies a request for a certificate of probable cause and the applicant files a notice of appeal, the application is automatically forwarded to the judges of this court for our consideration. Fed.R.App.P. 22(b). Presumably, if the district judge does not deny, but limits the certificate, the application will receive similar treatment: the notice of appeal will be forwarded to this court and will be construed, as it was here, as a request to expand the certificate. Thus, whether the district judge denies or limits a certificate, this court will in any event be called upon to assess the substantiality of the issues. Appellants will likely raise uncertified issues in the hope that we will exercise our authority to broaden the scope of the appeal in the interests of justice, just as they frequently appeal after the district judge denies a certificate entirely.

Because we decline to give legal effect to the district court's limitation in the certificate of probable cause, we must address all of Pilon's assertions of error in addition to his claim that the eyewitness identifications were improperly admitted.

## II

### Eyewitness Identification Evidence

Pilon contends the district court erred by granting summary judgment on his challenge to the eyewitness identification procedures without granting an evidentiary hearing and viewing photographs of the pretrial lineup. He claims his identification as the robber was impermissibly suggestive and unreliable. Specifically he argues: (1) he did not sufficiently resemble lineup coparticipants; (2) an officer at the lineup unduly focused the witnesses' attention on him by interrupting the lineup to adjust tape which had been placed on his face; and (3) the prosecution arranged for the identification witnesses to be present at a pretrial suppression hearing at which Pilon was also present.

### A. Standard of Review

We review de novo the denial of habeas corpus relief. *Tatum v. Christensen*, 786 F.2d 959, 963 (9th Cir.1986) (per curiam). We must presume the correctness of any underlying state court findings of historical fact. 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); *Austad v. Risley*, 761 F.2d 1348, 1350 (9th Cir.) (en banc), *cert. denied*, — U.S. —, 106 S.Ct. 163, 88 L.Ed.2d 135 (1985). The presumption does not apply when one of the defects enumerated in 28 U.S.C. § 2254(d)(1)–(7) is present or when the district court in a habeas proceeding concludes that the state court finding of fact is not fairly supported by the record. *Sumner* 449 U.S. at 550, 101 S.Ct. at 770; *Adamson v. Ricketts*, 789 F.2d 722, 727–28 n. 5 (9th Cir.1986) (en banc); *Austad*, 761 F.2d at 1350; *Bashor v. Risley*, 730 F.2d 1228, 1232 (9th Cir.), *cert. denied*, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984).

The ultimate question of the constitutionality of pretrial identification procedures is a mixed question of law and fact, *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982) (per curiam), which this court reviews de novo. *United States v. Bagley*, 772 F.2d 482, 492 (9th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986); *Ponce v. Cupp*, 735 F.2d 333, 336 (9th Cir.1984).

### B. Background

The lineup witnesses included the two robbery victims (John and Judith Groen), a

customer who entered the pharmacy during the robbery (Elsie Vanderpol), a person who worked in an office next to the pharmacy (Thomas Lever), and a construction worker who had been working near the scene of the robbery (James O'Hara). The lineup was conducted in two viewing sessions. The record does not reveal whether any witness identified any lineup participant during the first viewing. The witnesses then requested that tape and gauze be placed over the noses of all the lineup participants because the robber had worn a bandage over his nose at the time of the robbery. That was done and a second lineup viewing was conducted. Each of the participants was asked to step out and turn to the left and then to the right before stepping back into place. As the third man in the lineup was going through this routine, the tape which had been applied to Pilon's face slipped. Pilon was participant number 5. One of the police officers thereupon said: "Hold it, hold it, stop everything. This man, Number 5, your tape is falling off." The officer then walked over to Pilon and reapplied the tape to his face. This was done in front of the witnesses to the lineup.[4] After the second lineup viewing, John Groen, one of the victims, unequivocally identified Pilon as the robber. His wife, Judith Groen, alternatively identified Pilon and another lineup participant. One of the other witnesses tentatively identified Pilon as the robber. Of the remaining two witnesses, one identified someone other than Pilon and the other did not identify anyone.

Forty-nine days after the lineup, and ten days before trial, a pretrial hearing was held on Pilon's motion to suppress his identification by the lineup witnesses. The prosecution had the lineup witnesses attend that hearing in case they were needed as witnesses. They observed Pilon in jail clothing, heard that he had been charged with escape from a prison, and that he had

a prior criminal record. The state court at the suppression hearing viewed photographs of the lineup participants which had been taken during the lineup and found that the participants sufficiently resembled one another so as not to render the lineup impermissibly suggestive. Pilon's motion to suppress was denied. The state court at that proceeding also noted that Pilon had suffered no prejudice from the witnesses' presence at the suppression hearing.

At the trial, the Groens, Vanderpol, and O'Hara all positively identified Pilon as the robber. It is not disputed that the eyewitnesses' in-court and pretrial identifications of Pilon constituted virtually the entire case against him.

## C. *Photographs*

We address first the argument that the district court erred by failing to view the photographs.

■ The district court had no obligation to view the lineup photographs for dissimilarity among the participants, a question of historical fact which the state trial and appellate courts had resolved, because the photographs were not part of the district court record and because Pilon did not demonstrate any inability to have the photographs produced. *Austad*, 761 F.2d at 1351–55. Indeed, not only did Pilon fail to produce the photographs which he claims the district court should have viewed, he opposed the motion of the state defendants to augment the record on appeal before this court with copies of the photographs. The motions panel that heard the motion to augment the record on appeal permitted the photographs to be lodged with the clerk of this court and determined that the merits panel should give such consideration to the photographs as it deemed appropriate. We have viewed the photographs and conclude, as did the state trial court and the state court of appeals, that the defendant

---

**4.** The officer testified he had adjusted the tape on Pilon's face "in the back room," and not in the presence of the lineup witnesses. The trial court and the state court of appeals assumed for the purpose of their rulings on this issue that

the incident had occurred in the witnesses' presence as claimed by Pilon. The officer testified he had reapplied the tape to Pilon's face so he "would look no different from the other individuals."

and the other lineup participants sufficiently resembled one another so as not to render the lineup impermissibly suggestive.

### D. *Evidentiary Hearing*

■ In habeas proceedings under 28 U.S.C. § 2254, an evidentiary hearing is required when: (1) the petitioner's allegations, if proved, would establish the right to relief (prima facie case); and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts. *Townsend v. Sain*, 372 U.S. 293, 312–13, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963); *Bashor*, 730 F.2d at 1233.

#### 1. *Prima Facie Case*

■ Pilon's allegations, if proved, would establish the right to relief. In-court identification testimony is inadmissible as a violation of due process whenever: (1) a pretrial encounter is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); and (2) the identification is not sufficiently reliable to outweigh the corrupting effects of the suggestive procedure. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

#### 2. *Reliable Factfinding*

■ The next question is whether the state court reliably found the relevant facts. The state cannot be deemed to have conducted the full and fair hearing necessary to reliable fact finding if it did not actually reach and decide the issues of fact tendered by the defendant. *Townsend*, 372 U.S. at 313–14, 83 S.Ct. at 757.

Pilon contends the district court failed to resolve the following factual issues: (1) whether the photographs of the pretrial lineup reveal substantial dissimilarities in appearance between Pilon and the others; (2) whether the witnesses made any identifications in the first of the two lineup sessions; (3) whether the witnesses were permitted to discuss their thoughts and impressions among themselves between the two lineups and their choices afterwards; (4) whether the witnesses were present when the officer interrupted the second lineup to adjust the tape on Pilon's face; (5) whether officers told the witnesses anything about the suspects after the lineup; (6) the nature of any initial description the witnesses gave to the police; and (7) how tentative the witnesses were in their selection.

The district court had no obligation to hear evidence on the first and fourth issues mentioned above. As to the first issue, the photographs were not part of the record and Pilon did not demonstrate any inability to produce them. *Austad*, 761 F.2d at 1351–55. As to the fourth issue, that was resolved in Pilon's favor by the state trial court and state court of appeals when they accepted Pilon's contention that the tape incident had occurred in the lineup witnesses' presence. Although the state court did not expressly resolve the remaining five factual issues tendered by Pilon, those issues were implicitly resolved against him by the state court's denial of his suppression motion. As we stated in *Knaubert v. Goldsmith*, 791 F.2d 722 (9th Cir.1986):

> [N]ot every finding of fact need be stated on the record in infinite detail and clarity. In certain circumstances we will recognize that a factual determination is implicit in the actions taken by a state court. When a state trial court holds a hearing on a motion to suppress evidence and rules on the motion, a federal district court may assume that the state court found the facts necessary to support the state court's decision, unless there is some indication that the state court applied an incorrect legal standard.

*Id.* at 727.

Pilon points to nothing that suggests the state court applied the wrong standard. Indeed, the record shows that both the state trial court and the state court of appeals expressly applied the standard mandated by *Simmons*, 390 U.S. at 384–85, 88 S.Ct. at 971 and determined that the eyewitnesses' identification of Pilon was reliable.

Courts consider the following five factors when determining reliability: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the level of certainty demonstrated at the confrontation, and (5) the length of time between the crime and the confrontation. *Manson*, 432 U.S. at 114, 97 S.Ct. at 2253; *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

■ The record reflects that the two victims, John and Judith Groen, viewed the robber for almost five minutes at close range in well-lighted conditions while he commanded their attention. John Groen testified he made a special effort to remember the robber's features. He also identified Pilon unequivocally at the lineup only one week after the robbery. Judith Groen initially was less certain in her identification of Pilon, but " ... after I got home there was no more doubt." (Transcript of state court proceedings, pages 32–33). The witness O'Hara tentatively identified Pilon at the lineup and positively identified him at trial. He had been approximately twenty feet from the robber and had seen him twice, once headed toward the pharmacy and once headed away. The pharmacy customer, Vanderpol, saw the robber briefly and while she did not identify him at the lineup, she identified him in court at the time of trial.

Because the record fairly supports the conclusion that the identifications were reliable, the district court correctly denied relief without a hearing even after assuming for the purpose of argument that the encounter at the suppression hearing was suggestive. *See United States v. Love*, 746 F.2d 477, 478 (9th Cir.1984) (per cu-

riam) (recognizing that court may assume suggestiveness arguendo and review reliability); *Ponce*, 735 F.2d at 336 (assuming suggestiveness and reviewing reliability).

### III

*Motion In Limine*

Pilon contends that by denying his motion *in limine* to exclude evidence of prior convictions the trial court effectively deprived him of his constitutional right to testify in his own behalf.[5] Our review of the district court's determination of this question of law is de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We agree with the district court that Pilon was procedurally barred from raising this issue in his habeas petition.

Pilon moved *in limine* to exclude evidence of prior convictions. A criminal motions judge declined to rule on the motion in advance of trial, noting that the issue was "to be handled at trial because it ... would be more appropriately handled by the Trial Judge than the Criminal Motions Department." Pilon never renewed the motion. At trial he declined to testify in his own behalf. The state court of appeals refused to review Pilon's challenge to the denial of his motion *in limine*, stating that under *State v. Wilson*, 29 Wash.App. 895, 626 P.2d 998 (1981), by failing at trial to renew his objection to the denial of the motion, Pilon had failed to preserve the issue for appeal.

■ A prisoner who under state law has waived the right to appeal a constitutional claim may not obtain federal habeas corpus relief on that issue without demon-

---

**5.** We have never directly addressed the question of whether a criminal defendant's right to testify is of constitutional magnitude. *See United States v. Ives*, 504 F.2d 935, 939–40 (9th Cir. 1974) (declining to decide the question), *vacated on other grounds*, 421 U.S. 944, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1974). *See generally Alicea v. Gagnon*, 675 F.2d 913, 921–22 & 921 n. 15 (7th Cir.1982) (summarizing positions taken by various jurisdictions). We do not decide the ques-

tion here because we dispose of this issue on nonconstitutional grounds. *See Maher v. Gagne*, 448 U.S. 122, 133, 100 S.Ct. 2570, 2577, 65 L.Ed.2d 653 (1980) (noting " 'longstanding judicial policy of avoiding unnecessary decision of important constitutional issues.' ") (*quoting Gagne*, 594 F.2d at 342). *Hagans v. Lavine*, 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974) (constitutional issues should not be reached if statutory issues are dispositive).

strating cause for, and actual prejudice from, the default. *Reed v. Ross*, 468 U.S. 1, 11, 104 S.Ct. 2901, 2908, 82 L.Ed.2d 1 (1984); *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). The cause and prejudice rule exists for reasons of "comity and ... the orderly administration of criminal justice." *Reed*, 468 U.S. at 11, 104 S.Ct. at 2908 (*quoting Francis v. Henderson*, 425 U.S. 536, 539, 96 S.Ct. 1708, 1710, 48 L.Ed.2d 149 (1976)). The rule is designed to: (1) protect states' interests in the finality, efficiency, and accuracy of their judgments; (2) avoid unnecessary federal intrusions into the states' exercise of their sovereign power to punish offenders; and (3) protect, at the same time, against miscarriage of justice. *Murray v. Carrier*, — U.S. —, —–—, 106 S.Ct. 2639, 2648–50, 91 L.Ed.2d 397 (1986). *Id.* 468 U.S. at 10–11, 104 S.Ct. at 2907–08; *Engle*, 456 U.S. at 126–29, 102 S.Ct. at 1571–72; *Wainwright*, 433 U.S. at 88–90, 97 S.Ct. at 2507–08.

In *State v. Kelly*, 102 Wash.2d 188, 192–93, 685 P.2d 564, 568 (1984) and *State v. Koloske*, 100 Wash.2d 889, 896, 676 P.2d 456, 459–61 (1984), the Washington Supreme Court resolved an apparent conflict in the decisions of that state's intermediate appellate courts and held that unless the trial court informs the defendant that further objections at trial are necessary, the court's denial of a motion *in limine* to exclude evidence of prior convictions is final and the defendant has a standing objection to the denial. This rule applies when the trial judge makes a clear, nontentative ruling. *State v. Latham*, 100 Wash.2d 59, 65, 667 P.2d 56, 59 (1983). When, however, the court refuses to rule on the motion before trial, the movant must raise the issue at the appropriate time during trial in order to preserve the issue for review. If, as here, the defendant decides not to testify following the denial of his motion *in limine*, the defendant must renew his motion at the time of trial and make an offer of proof on the record to preserve any error for appellate review. *Koloske*, 100 Wash.2d at 896, 676 P.2d at 461.

Pilon's counsel failed to renew his motion *in limine* at trial and failed to make an offer of proof. Pilon argues, however, that his counsel may have had cause to believe the court's pretrial decision on his motion was final and that the issue was therefore preserved. He suggests that any error on his part in failing to preserve the issue for appeal was justified by confusing and inconsistent case law on the issue in the state of Washington at the time of his trial. His trial preceded *Kelly* and *Koloske*.

Pilon may not rely on the claimed former inconsistency in Washington law to establish cause for his failure to preserve this issue for appeal. The inconsistency had to do with whether the denial of a motion *in limine* was a final ruling that could be challenged on appeal without further evidentiary objections at trial. Washington courts in some cases had suggested that all rulings on motions *in limine* were tentative and that defendants had to renew their objection to the denial of such motions in order to preserve the issue for review. *State v. Austin*, 34 Wash.App. 625, 627, 662 P.2d 872, 874 (1983), *aff'd on other grounds sub nom State v. Koloske*, 100 Wash.2d 889, 676 P.2d 456 (1984); *State v. Wilson*, 29 Wash.App. 895, 898, 626 P.2d 998, 1001 (1981). Other Washington appellate courts had held that some motions *in limine* could and should be finally decided before trial, and defendants did not have to renew their objections to rulings on those motions or to evidence admitted as a result of such rulings. *State v. Moore*, 33 Wash. App. 55, 59–60, 651 P.2d 765, 768 (1982); *State v. Latham*, 30 Wash.App. 776, 780, 638 P.2d 592, 595 (1981), *aff'd*, 100 Wash.2d 59, 667 P.2d 56 (1983). *See Kelly*, 102 Wash.2d at 191, 685 P.2d at 568 (recognizing conflict).

 Here, however, Pilon can find no comfort even in the line of cases stating the more generous *Moore-Latham* standard, because no judge ever ruled on his

motion.[6] We know of no Washington case holding that when a judge specifically declines to rule on a motion *in limine* and the defendant does not renew the motion at trial, the judge's inaction can be construed as a final denial and the defendant has preserved the issue for review. This rule would obviously make no sense, because there would be no ruling to review.

Because Pilon did not renew his motion *in limine* at trial and has failed to show cause for his failure to do so, we need not consider whether he suffered prejudice from the alleged error. *See Engle,* 456 U.S. at 129, 102 S.Ct. at 1572. We conclude that Pilon's waiver under state law of the right to appeal the issue precludes federal habeas corpus review.

### IV

### *Failure to Give Deadly Weapon Instruction*

Pilon finally contends that the state trial court denied him due process by failing to give a separate jury instruction that to enhance his sentence for being armed with a deadly weapon during commission of the robbery, the jury had to find beyond a reasonable doubt that he was armed at the time of the robbery with a weapon which in fact was a deadly weapon.

### A. *Pilon's Failure to Request Instruction*

■ Although Pilon failed to request this separate instruction at trial, he is not procedurally barred from raising the issue. Under Washington law, failure to give this separate deadly weapon instruction is an error of state constitutional dimension and may be raised for the first time on appeal. *State v. Hall,* 95 Wash.2d 536, 627 P.2d 101, 103 (1981). We decline to apply the procedural default rule of *Wainwright v. Sykes,* 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–08, 53 L.Ed.2d 594 (1977), when under

state law constitutional errors can be raised for the first time on appeal. *See Huffman v. Ricketts,* 750 F.2d 798, 800–01 (9th Cir.1984); *Quigg v. Crist,* 616 F.2d 1107, 1111 n. 4 (9th Cir.), *cert. denied,* 449 U.S. 922, 101 S.Ct. 323, 66 L.Ed.2d 150 (1980).

### B. *The Instructions and Verdict*

The jury was instructed by jury instruction No. 11:

> To convict the defendant, Gary Van Pilon, of the crime of robbery in the first degree, as alleged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> . . . .
>
> (5) That in the commission of these acts or in immediate flight therefrom the defendant, or the accomplice was armed with a deadly weapon or displayed what appeared to be a firearm or other deadly weapon;
>
> . . . .
>
> If you find from the evidence that each of these elements have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

The jury was provided with a special verdict form in which the jurors were asked to determine whether, if they found Pilon guilty, he was actually armed with a deadly weapon. The jury found Pilon guilty of two counts of armed robbery and specially found that he had been armed with a deadly weapon. Pilon's sentence was enhanced under Rev. Code Wash. § 9.95.040 based on the jury's special verdict that he was armed with a deadly weapon. The state court of appeals determined that the failure to give the separate "beyond a reasonable doubt" jury instruction as to the finding that Pilon was armed with a deadly weapon at the time of the robbery was harmless error because there was no dispute that a deadly

---

6. In its decision affirming the conviction, the Washington Court of Appeals referred to "the court's ruling denying the motion [*in limine*]." The record reveals, however, that the trial court never ruled on the motion, and Pilon concedes that counsel never renewed it. We do not consider ourselves bound by the state appellate court's characterization of the disposition of the motion.

weapon in fact had been used. The state court of appeals stated:

> Here, both robbery victims testified that Pilon had been armed with a gun. The pharmacist testified he was familiar with firearms from his military training and recognized the gun as a .38 calibre pistol. Pilon's co-defendant testified only that she did not see a gun from her vantage point or know that a gun was going to be used. No evidence controverts the victims' testimony that the male robber was armed, nor was the fact disputed at trial. In the absence of any evidence that would create a reasonable doubt about the presence of the gun, failure to instruct the jury on the state's burden of proof was harmless error.

### C. *No Due Process Denial*

A state prisoner may obtain federal habeas corpus relief only if he is held in custody in violation of the Constitution, laws, or treaties of the United States. *Engle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Gutierrez v. Griggs,* 695 F.2d 1195, 1197 (9th Cir.1983); 28 U.S.C. § 2254(a). Claims that merely challenge the correctness of jury instructions under state law cannot reasonably be construed to allege a deprivation of federal rights. *Givens v. Housewright,* 786 F.2d 1378, 1381 (9th Cir.1986); *Gutierrez,* 695 F.2d at 1197. To prove a due process violation based on jury instructions, a habeas petitioner must show that the "instruction by itself ... infected the entire trial...." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) (*quoting Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)); *see Camitsch v. Risley,* 705 F.2d 351, 355 (9th Cir.1983) (instruction that renders trial fundamentally unfair justifies habeas relief). Undesirable, erroneous, or even universally condemned instructions may survive due process scrutiny. *Henderson,* 431 U.S. at 154, 97 S.Ct. at 1736.

Pilon has failed to show a federal due process violation by the state trial court's failure to give the separate deadly weapon instruction. The failure to give that instruction did not infect Pilon's trial nor render it fundamentally unfair. *Camitsch,* 705 F.2d at 355; *see Henderson,* 431 U.S. at 154, 97 S.Ct. at 1736.

The judgment is AFFIRMED.