5 F.3d 540
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee
v.
Steven George BEKINS, Defendant-Appellant
 No. 92-30125.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1993.
Decided Aug. 19, 1993.
 
 Appeal from the United States District Court for the District of Oregon; No. CR-66-01, Malcolm F. Marsh, District Judge, Presiding.
 D.Or.
 VACATED AND REMANDED.
 
 
 1
 Before PREGERSON and KLEINFELD, Circuit Judges, and WILLIAM A. INGRAM,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Steven George Bekins appeals his sentence and conviction of bank robbery (18 U.S.C. Secs. 2113(a) and (d)) and of being an ex-felon in possession of a firearm (18 U.S.C. Sec. 922(g)(1)). Following a jury trial at which Bekins was found guilty, the district court found Bekins to be an armed career criminal per 18 U.S.C. Sec. 924(e) and sentenced him to 300 months incarceration on the robbery charge and 360 months on the possession charge, to be served concurrently.
 
 
 4
 Bekins seeks a new trial on the ground that the trial court erred in denying his motion to suppress certain eyewitness identification testimony as the product of an impermissibly suggestive show-up and on the ground that the trial court erred in denying his request for a lesser included offense instruction. Bekins also seeks a remand for resentencing on the ground that the trial court improperly found his conviction for ex-felon in possession of a firearm to be a crime of violence requiring an increased sentence as a career offender under United States Sentencing Guideline (U.S.S.G.) Sec. 4B1.1.
 
 
 5
 For the reasons set forth below, the court affirms Bekins' conviction but remands for resentencing.
 
 FACTUAL BACKGROUND
 
 6
 On December 14, 1990, Bekins entered the First Interstate Bank in Portland, Oregon and approached Madeline Hasibar's teller window. As he neared Hasibar could see that Bekins was wearing a stocking over his head, a tan-colored suede jacket with a fleece lining and a black hat. Bekins carried a shiny silver gun in his right hand. He walked up to the window and said "Give me your money." Hasibar gave Bekins her ten and twenty dollar bills as well as a package of "bait money" which contained a transmitting device. Bekins then moved on to the next teller window where he held the gun on teller Marta Smith and ordered her to give him the money in her hand and the money in her cash draw. Smith complied and also handed him her package of bait money. Bekins left the bank with $1,884.00 in cash.
 
 
 7
 Bekins was arrested after a brief pursuit by Portland Police who had located him by activating the tracking system which followed the signals emitted from the devices planted in the bank's bait money. A search of Bekins' person produced $1,885.00 in cash and two transmitters. A nylon stocking, a silver .25 caliber semi-automatic pistol, a tan-colored suede jacket and a black hat were found in the trunk of the car. Bekins claimed that the car belonged to an individual named John McFetridge.
 
 
 8
 Teller Hasibar positively identified the coat found in Bekins' trunk as the one worn by the bank robber. She identified Bekins himself as being the same height and build as the robber. Teller Smith was shown the jacket and looked at Bekins and immediately identified Bekins as the man who had robbed her earlier. Customer Phillip Loomis also identified Bekins at the scene by his mustache and "the clothing, and just the way the person looked."
 
 
 9
 At trial Bekins claimed that the owner of the car, John McFetridge, had committed the robbery. Photographs of Bekins and McFetridge appearing as part of the record reveal that the two men are strikingly similar in appearance. Conveniently however, McFedridge died in a car accident some time between the robbery and the trial. Bekins claimed that prior to his arrest he and McFetridge had regularly gotten together to take and sell drugs. Over the course of this association McFetridge allegedly incurred a debt to Bekins of $2,500.00 of which he had paid off $500.00.
 
 
 10
 Bekins claimed that on December 13, 1990, the day before the robbery, he met with McFetridge and requested that he repay the remaining $2,000.00. The pair agreed to meet the following day at 10:00 a.m. at a Safeway store near the First National Bank in Portland. Bekins claims that although he met McFetridge at the appointed time, McFetridge did not have the money. McFetridge instead dropped Bekins off at his house, agreeing to meet Bekins again at 1:00 p.m. at a restaurant two blocks from the bank. Bekins claims that he arrived at the restaurant on time but that McFetridge was late. When McFetridge did arrive Bekins jumped into the car and McFetridge's girlfriend handed him a wad of money. McFetridge immediately agreed to lend Bekins the car and he and his girlfriend jumped out and Bekins drove off.
 
 
 11
 Bekins claims that he fled from police because he was on parole and was afraid of going back to prison. He stuffed the money from McFetridge into his shirt during the chase. Bekins denied any knowledge of the robbery or of the source of the money.
 
 
 12
 In support of his theory, Bekins also claims that following his arrest McFetridge called him and admitted that he had committed the robbery and stated that he would turn himself in. Two defense witnesses also testified that McFetridge had confessed the robbery to them. McFetridge died without having made any contact with law enforcement authorities. Rebuttal witnesses testified that McFetridge was at home in Salem, Oregon on the date of the robbery at the time Bekins alleged to have met him in Portland.
 
 DISCUSSION
 
 13
 A. Did the District Court err in denying the defendant's motion to suppress the pretrial identifications as impermissibly suggestive?
 
 
 14
 On appeal Bekins argues that the trial court erred in denying his motion to suppress the pretrial identification testimony because impermissibly suggestive factors had tainted those identifications.
 
 
 15
 First, Bekins argues that the officers on the scene draped the jacket which had been discovered in the trunk of the car and which was identified as having been worn by the robber, over his shoulders when he was presented to the witnesses for identification, thus impermissibly suggesting that he was the robber.
 
 
 16
 Hasibar testified that she could not identify the robber's facial characteristics because of the stocking over his face and that her identification of Bekins was based mainly on the coat and his general build. She stated that the police "brought it [the jacket] over by him [Bekins] and kind of put it on his shoulder." Smith testified that she made her identification of Bekins as the man who robbed her before the jacket was draped over his shoulders. Loomis testified that he identified Bekins as the man he observed rob the bank based on the suspect's mustache and "[t]he clothing, and just the way the person looked." Loomis also identified the jacket as it lay in the trunk of the car but testified that the police officers did not place the jacket on the suspect.
 
 
 17
 Bekins next argues that prior to the show-up, the witnesses had given police inconsistent descriptions of the robber. He asserts that the estimated age of the robber ranged from late 20's to early 40's; the estimates of weight and build included slim, thin, medium, average, and heavy; two witnesses noticed the robber's mustache while the rest did not observe any facial hair; three witnesses recalled a hat while four did not; and five witnesses saw a handgun while two did not observe any weapon. Five witnesses saw a tan-colored jacket with a fleece-like lining, one did not recall a jacket and one remembered it as "multi-colored."
 
 
 18
 Furthermore, Bekins complains, there were several police vehicles on the scene at the time of the show-up and when he was presented to the witnesses for identification he was in handcuffs and was flanked by police officers, all adding further to the suggestiveness of the show-up. Bekins argues that the inconsistent reports in combination with the suggestiveness of the show-up procedures created a tainted totality that required the exclusion of the identification testimony at trial.
 
 
 19
 The constitutionality of pretrial identification procedures is a mixed question of law and fact to be reviewed de novo by the appellate court. Van Pilon v. Reed, 799 F.2d 1332, 1336 (9th Cir.1986). "Suggestive pretrial identification procedures may be so impermissibly suggestive as to taint subsequent in-court identifications and thereby deny a defendant due process of law." United States v. Bagley, 772 F.2d 482, 492 (9th Cir.1985). Identification testimony is inadmissible if:
 
 
 20
 (1) a pretrial encounter is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, and (2) the identification is not sufficiently reliable to outweigh the corrupting effects of the suggestive procedure.
 
 
 21
 Van Pilon, supra, at 1338. The reliability of an identification is evaluated by reference to the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 199, 34 L.Ed.2d 401, 411, 93 S.Ct. 375 (1972).
 
 
 22
 Despite the fact that "in most cases it is unavoidable that a show-up at the scene of a crime will be suggestive of guilt to a certain degree ... a show-up is a permissible means of identification." United States v. Kessler, 692 F.2d 584, 585 (9th Cir.1982). In this circuit displaying a suspect in handcuffs, accompanied by a large number of police officers is not inherently suggestive. Id. Other circuits have approved show-ups in which witnesses were shown clothing seized from the suspect and in which the suspect was required to wear clothing found in his possession. See, e.g., Willis v. Garrison, 624 F.2d 491, 494-95 (4th Cir.1980); United States v. Johnson, 540 F.2d 954, 957 (8th Cir.1976), cert. denied, 429 U.S. 1025.
 
 
 23
 The trial court expressly considered the Van Pilon and Biggers tests. While he was "concerned enough about the suggestiveness" of the identification procedures to consider the second prong of the Van Pilon test, the district judge concluded that the identifications were otherwise reliable under the Biggers analysis. He found that the witnesses had ample opportunity to view the robber during the crime and that each witness was attentive in his or her observations. He found that all the witnesses gave accurate descriptions prior to viewing Bekins at the show-up and they all expressed reasonable certainty that they were again viewing the same man. Finally, although the record does not reveal exactly how much time elapsed between the robbery and the confrontation, it is clear that both events took place on the same day.
 
 
 24
 We agree with the trial court's analysis. Each of the five Biggers factors indicate that the show-up identifications were reliable. Bekins' claim that the prior identifications were inconsistent with one another is not supported by the record; each witness identified the jacket with remarkable accuracy and consistency, several remembered the robber's dark hat, and nearly all recalled a shiny silver gun. The only true inconsistencies appeared in the witnesses' height and weight descriptions which varied between 5'8" to 6'0" and 150 to 180 pounds. This is not in itself sufficient to invalidate the identifications.
 
 
 25
 Moreover, as the government points out, the testimony of only one of these eyewitnesses was offered at trial--that of Marta Smith. Smith's identification was the most accurate and was consistent with her pre-show-up identification. Her identification was certain; she "immediately panicked ... at seeing him again so close." She also testified that she was shown the jacket after she identified Bekins as the robber.
 
 
 26
 We conclude that, under the totality of the circumstances, the pretrial show-up was not impermissibly suggestive and that the motion to suppress was properly denied.
 
 
 27
 B. Did the District Court err by refusing to instruct as to a lesser included offense?
 
 
 28
 Bekins requested that the trial court instruct the jury as to the "lesser included offense" of "knowing possession of money stolen from a bank" under 18 U.S.C. Sec. 2113(c). The court denied this request, noting that knowing possession "is simply not a lesser included offense within the total framework of the bank robbery provision of 2113." The court further stated:
 
 
 29
 The reason is that there are two elements that you would not have in that lesser included offense which are not elements in the bank robbery offense, those being the knowledge elements that you have in paragraphs one and two.
 
 
 30
 "[R]eview of a district court's decision regarding the availability of a lesser included offense is de novo." United States v. Spencer, 905 F.2d 1260, 1261 (9th Cir.1990).
 
 
 31
 Federal Rule of Criminal Procedure 31(c) provides that a "defendant may be found guilty of an offense necessarily included in the offense charged." In United States v. Gaddis, 424 U.S. 544, 47 L.Ed.2d 222, 96 S.Ct. 1023 (1976) the Court stated:
 
 
 32
 Receipt or possession of the proceeds of a bank robbery in violation of Sec. 2113(c) is simply not a lesser included offense within the total framework of the bank robbery provisions of Sec. 2113. Rather, Sec. 2113(c) reaches a different "group of wrongdoers," i.e., "those who receive the loot from the robber."
 
 
 33
 Id. at 548; 47 L.Ed.2d at 227. Bekins argues that Gaddis is not controlling because in reaching its conclusion the court relied on the "inherent relationship" test for determining whether one offense is necessarily included in another. This approach was formulated in United States v. Whitaker, 447 F.2d 314 (D.C.Cir.1971) and states that
 
 
 34
 there must be an "inherent" relationship between the greater and lesser offenses, i.e., they must relate to the protection of the same interests, and must be so related that ... proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense.
 
 
 35
 Id. at 319.
 
 
 36
 This approach was recently rejected by the Supreme Court in Schmuck v. United States, 489 U.S. 705, 103 L.Ed.2d 734, 109 S.Ct. 1443 (1989) which adopts the "elements approach" to Rule 31(c) instead. Schmuck requires that
 
 
 37
 one offense is not "necessarily included" in another unless the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c).
 
 
 38
 Id. at 716, 103 L.Ed.2d at 746. Thus, Bekins asks this court to reevaluate the Gaddis holding that violation of Sec. 2113(c) is not a lesser included offense of Secs. 2113(a) and (d) in light of Schmuck 's adoption of the "elements approach."
 
 
 39
 As an initial matter, it is not at all clear that the Gaddis court actually employed the "inherent relationship" approach as Bekins claims. The issue in Gaddis was whether one could be convicted of both bank robbery and of possessing the proceeds of the robbery and not whether the latter offense was included in the former. The Gaddis decision relied heavily on the case of Heflin v. United States, 358 U.S. 415, 3 L.Ed.2d 407, 79 S.Ct. 451 (1959) which had held that a person cannot be convicted of both robbing a bank and of possessing the stolen proceeds of the robbery because by its provision of two separate subsections Congress intended to reach two different classes of wrongdoers, those who rob banks and those who merely receive the loot. Id. at 419, 3 L.Ed.2d at 410. Heflin also does not discuss the determination of whether one offense is a lesser included offense of another but only whether a defendant can be convicted of violating both Secs. 2113(a) and (d) and Sec. 2113(c). It certainly does not employ the inherent relationship approach as this was not even defined until 1971. Gaddis merely affirms Heflin 's holding and its statement that possession is not a lesser included offense of robbery is dicta.
 
 
 40
 In any event, the trial court in the instant case specifically undertook the elements analysis that Bekins advocates and expressly found that Sec. 2113(c) requires an element that is not required by Secs. 2113(a) and (d). Our own analysis using the Schmuck elements approach reaches the same conclusion. The elements of Sec. 2113(a) are (1) the taking, or attempted taking of (2) any property or money from (3) a bank or financial institution (4) by force, violence or intimidation;[1] and the elements of Sec. 2113(c) are (1) receiving or possessing (2) property or money which has been stolen from (3) a bank or financial institution (4) with knowledge that the property was stolen. Subsection (a) punishes the taking of money from a bank while subsection (c) punishes its possession. The latter requires the prosecution to prove both possession of stolen property and knowledge that the property is stolen while the former does not require proof of either of these elements. Thus, subsection (c) is simply not included in subsection (a).
 
 
 41
 This conclusion is supported by the recent decision in United States v. Spencer, 905 F.2d 1260 (9th Cir.1990) which held that, under the elements test, receiving stolen property is not a lesser included offense of taking property. The panel wrote:
 
 
 42
 The elements of [receiving stolen property] are not a subset of [theft]: Receiving is different from taking; intent to steal is different from knowing that something is stolen.
 
 
 43
 Id. at 1262; see also United States v. Gregory, 891 F.2d 732, 734 (9th Cir.1989) (bank larceny is not a lesser included offense of bank robbery because bank larceny requires proof of specific intent and bank robbery does not.)
 
 
 44
 Bekins argues that the express possession and knowledge elements of subsection (c) exist impliedly in subsection (a) as well: "... any robber who successfully takes bank proceeds will necessarily be in possession of such proceeds;" and "... it is inconceivable that one could take money from a bank by force, violence or intimidation, without knowledge that the property was stolen." While this may be logically indisputable, it is irrelevant to a comparative analysis of the elements of each crime. The "elements" of an offense are the constituent parts which the prosecution must prove beyond a reasonable doubt to sustain a conviction. The possession and knowledge elements necessary for a conviction under 18 U.S.C. Sec. 2113(c) simply need not be proven to sustain a conviction under 18 U.S.C. Secs. 2113(a) and/or (d). See, e.g., U.S. v. Gregory, supra, 891 F.2d at 734.
 
 
 45
 Finally, Schmuck also reaffirms the second aspect of the lesser included offense inquiry, i.e., that the evidence at trial be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater. Schmuck, 489 U.S. at 716 n. 8, 103 L.Ed.2d at 746 n. 8. In this case, as the trial court stated in denying the requested instruction, the evidence could not support a finding that Bekins knowingly received stolen bank money because the defense consistently denied that Bekins had any knowledge of or participation in the robbery and continually asserted that he had obtained the money from McFetridge without any knowledge that it was stolen.
 
 
 46
 The district court did not err in denying the defense request for a lesser included offense instruction.
 
 
 47
 C. Did the District Court err in finding that Bekins' conviction for unlawful possession of a firearm was a crime of violence requiring an enhanced sentence under U.S.S.G. Sec. 4B1.1?
 
 
 48
 Bekins was convicted of two counts: (I) Armed Bank Robbery (18 U.S.C. Sec. 2113(a) and (d)) and (II) Ex-Felon in Possession of a Firearm (18 U.S.C. Sec. 922(g)(1)). In determining the sentence for Count I the district court found that Bekins was a Career Offender within the meaning of U.S.S.G. Sec. 4B1.1 and assigned him an offense level of 34 pursuant to the table set out therein. This offense level, combined with the mandatory criminal history category of VI, authorized the court to sentence Bekins to a term of 262 to 327 months. Since the statutory maximum for armed bank robbery is 300 months (25 years), Bekins was sentenced to 300 months on Count I.
 
 
 49
 The district court then found that Bekins' conviction on Count II warranted the enhanced sentence provisions of 18 U.S.C. Sec. 924(e) which apply to any person who violates section 922(g) and has three prior violent felony convictions. Therefore, the relevant U.S.S.G. reference for Count II was Sec. 4B1.4 (Armed Career Criminal) which states that "A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. Sec. 924(e) is an armed career criminal" and provides
 
 
 50
 (b) The offense level for an armed career criminal is the greatest of:
 
 
 51
 (1) the offense level applicable from Chapters Two and Three; or
 
 
 52
 (2) the offense level from Sec. 4B1.1 (Career Offender) if applicable; or
 
 
 53
 (3)(A) 34, if the defendant used or possessed the firearm or ammunition in connection with a crime of violence ...; or
 
 
 54
 (B) 33, otherwise.
 
 
 55
 In calculating Bekins' sentence on Count II, the district court found that, under Sec. 4B1.4(b), the greatest possible sentence level was 37. This level was reached by referring back to Sec. 4B1.1, as directed by Sec. 4B1.4(b)(2), and then applying Sec. 924(e)'s statutory maximum of life imprisonment to get a 37 from the guideline's table. Since his criminal history category was VI (see Sec. 4B1.4(c)(2)), a level 37 resulted in a sentencing range of 360 months to life and the court accordingly sentenced Bekins to 360 months, to run concurrently with the sentence on Count I.
 
 
 56
 Bekins does not challenge his sentence as to Count I but argues that the district court incorrectly interpreted the sentencing guidelines as to Count II and that a correct application would have resulted in an offense level of 34, thereby reducing the applicable sentencing range on this count to between 262 and 327 months. On appeal, the government has stipulated that the sentence level as to Count II was erroneously calculated and that the appropriate level should have been 34.
 
 
 57
 We agree and hold that because unlawful possession of a firearm by a felon is not a crime of violence (United States v. Sahakian, 965 F.2d 740 (9th Cir.1992)), if a defendant is convicted only of violating 18 U.S.C. Sec. 922(g), the proper sentencing guideline is Sec. 2K2.1. If one is convicted only of violating Sec. 922(g) but with a Sec. 924(e) enhancement, Sec. 4B1.4 governs the sentence determination and Sec. 4B1.4(b)(2) is not "applicable." See United States v. Canon, No. 91-50853 (9th Cir. filed May 20, 1993). However, if one is convicted of violating Sec. 922(g) and Sec. 924(e) and is convicted on a separate count of a "crime of violence" then the sentence level under Sec. 4B1.4(b)(2) equals the sentence level for the companion offense from Sec. 4B1.1. The ultimate sentence level for the Sec. 922(g)/Sec. 924(e) conviction in this third type of case will then be the highest of the level from Chapters Two and Three, the companion offense's level from 4B1.1, and either 34 or 33, depending on whether the companion offense, if any, is a crime of violence (or a controlled substance offense, or if the firearm is described in 26 U.S.C. Sec. 5845(a)).
 
 
 58
 In this case, Bekins was also convicted of armed bank robbery, a crime of violence, so we calculate his sentence in accord with the above paragraph. Thus, the correct sentencing level in this case is 34 and we remand for resentencing on Count II.
 
 CONCLUSION
 
 59
 In sum, the court affirms Bekins' conviction because the claims of trial error do not merit reversal. Because the guidelines were improperly applied as to Count II, the court vacates the sentence and remands for resentencing on Count II.
 
 
 
 *
 The HONORABLE WILLIAM A. INGRAM, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Subsection (d) allows an increased sentence for the violation of subsection (a) when a dangerous weapon is used during the commission of the offense to assault or endanger the life of any person